UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

GENE SAMIT, Individually and on Behalf of      :      Civil Action No. 1:18-cv-07796-VEC
All Others Similarly Situated,                 :
                                               :      <u>CLASS ACTION</u>
                          Plaintiff,           :
                                               :
                                               :
          vs.                                  :
                                               :
CBS CORPORATION, LESLIE MOONVES                :
and JOSEPH R. IANNIELLO,                       :
                                               :
                          Defendants.          :
                                               :
———————————————————————— :
                                               :
JOHN LANTZ, Individually and on Behalf of      :      Civil Action No. 1:18-cv-08978-VEC
All Others Similarly Situated,                 :
                                               :      <u>CLASS ACTION</u>
                          Plaintiff,           :
                                               :
                                               :
          vs.                                  :
                                               :
CBS CORPORATION, LESLIE MOONVES,               :
JOSEPH R. IANNIELLO, LAWRENCE                  :
LIDING, DAVID RHODES, DAVID R.                 :
ANDELMAN, JOSEPH A. CALIFANO, JR.,             :
WILLIAM S. COHEN, GARY L.                      :
COUNTRYMAN, CHARLES K. GIFFORD,                :
LEONARD GOLDBERG, BRUCE S.                     :
GORDON, LINDA M. GRIEGO, ROBERT N.             :
KLIEGER, ARNOLD KOPELSON,                      :
MARTHA L. MINOW, DOUG MORRIS and               :
SHARI REDSTONE,                                :
                                               :
                          Defendants.          :
———————————————————————— x

MEMORANDUM OF LAW IN SUPPORT OF CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA'S MOTION FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF
LEAD COUNSEL

1494757_1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...............................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................................1

III.    ARGUMENT......................................................................................................................5

      A.      The Related Actions Should Be Consolidated for All Purposes.............................5

      B.      The Pension Trust Should Be Appointed Lead Plaintiff ........................................5

            1.      This Motion Is Timely ................................................................................6

            2.      The Pension Trust Has the Largest Financial Interest in the Relief
                 Sought by the Class.....................................................................................7

            3.      The Pension Trust Is Typical and Adequate of the Putative Class............11

      C.      The Court Should Approve the Pension Trust's Selection of Counsel...................12

IV.    CONCLUSION.................................................................................................................13

1494757_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brodi v. GoPro, Inc.*,
  2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...........................................................................10

*In re BP, PLC Sec. Litig.*,
  758 F. Supp. 2d 428 (S.D. Tex. 2010) ...................................................................................7, 8

*In re Centerline Holding Co. Sec. Litig.*,
  2008 WL 1959799 (S.D.N.Y. May 5, 2008) ............................................................7, 8, 9, 10

*In re Enron Corp., Sec. Litig.*,
  No. H-01-3624 (S.D. Tex.) .......................................................................................................12

*Jones v. Pfizer, Inc.*,
  No. 1:10-cv-03864-AKH (S.D.N.Y.)........................................................................................13

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  No. 1:02-cv-05893 (N.D. Ill.) ...................................................................................................12

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...............................................................5, 11, 12

*Patel v. L-3 Commc'ns Holdings Inc.*,
  No. 1:14-cv-06038-VEC (S.D.N.Y. Oct. 20, 2014) .................................................................12

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ...............................................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(1) ................................................................................................................................5
  §78u-4(a)(3)(A)(i) .......................................................................................................................6
  §78u-4(a)(3)(B)(i) ...................................................................................................................1, 5
  §78u-4(a)(3)(B)(ii) ..................................................................................................................1, 5
  §78u-4(a)(3)(B)(iii) .....................................................................................................................1
  §78u-4(a)(3)(B)(iii)(I) .................................................................................................................6
  §78u-4(a)(3)(B)(iii)(I)(bb) ..........................................................................................................7
  §78u-4(a)(3)(B)(iii)(I)(cc).........................................................................................................11
  §78u-4(a)(3)(B)(v) ................................................................................................................1, 12

Federal Rules of Civil Procedure
  Rule 23 ...................................................................................................................................6, 11
  Rule 42(a)...............................................................................................................................1, 5

- ii -

1494757_1

## I.      INTRODUCTION

Presently pending before the Court are two securities class action lawsuits (the "Related Actions") on behalf of purchasers of CBS Corporation securities alleging two disparate yet partially overlapping class periods.[1]  In securities class actions, the Private Securities Litigation Reform Act ("PSLRA") requires district courts to resolve consolidation before appointing the lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, the Related Actions should be consolidated because they each involve substantially similar legal and factual issues.  *See* Fed. R. Civ. P. 42(a); §III.A., *infra*.  As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions."  15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).

Construction Laborers Pension Trust for Southern California (the "Pension Trust") should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Trust's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the putative class is reasonable and should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND[2]

CBS is a mass media company with operations in entertainment, cable networks, publishing, and local media.  CBS operates businesses that span the media and entertainment industries,

---

[1]    The Related Actions are *Samit v. CBS Corporation*, No. 1:18-cv-07796, filed on August 27, 2018 and *Lantz v. CBS Corporation*, No. 1:18-cv-08978, filed on October 1, 2018.

[2]    These allegations are based on the allegations in the *Lantz* Complaint.

1494757_1

including the CBS Television Network, cable networks, content production and distribution, television stations, internet-based businesses, and consumer publishing.

The *Lantz* Action alleges that defendants issued false and misleading statements and/or failed to disclose that: (i) CBS executives, including CBS's Chief Executive Officer ("CEO") defendant Leslie Moonves, engaged in widespread workplace sexual harassment at CBS; (ii) CBS's enforcement of its own purported policies was inadequate to prevent the foregoing conduct; (iii) such conduct would subject CBS to heightened legal liability and impede the ability of key CBS personnel to execute the Company's business strategy; and (iv) defendants' public statements during the Class Period were materially false and misleading and/or lacked a reasonable basis.

As alleged in the *Lantz* Complaint, CBS regularly acknowledged throughout the Class Period (November 3, 2017 through July 27, 2018) that the "Company's business depends upon the continued efforts, abilities and expertise of its chief executive officer and other key employees" and that it "believes that the unique combination of skills and experience possessed by its executive officers would be difficult to replace, and that the loss of its executive officers could have a material adverse effect on the Company." *Lantz* Complaint at ¶28.  In addition, CBS claimed to maintain "standards for ethical conduct that are expected of all directors and employees of the Company." *Id.* at ¶52.  Such standards, as outlined in CBS's Business Conduct Statement, included the Company's "'zero tolerance' policy for sexual harassment or harassment." *Id.* at ¶3.

In October 2017, the #MeToo movement began as an umbrella of solidarity on Twitter, helping to empower countless women to share their experiences of surviving sexual harassment or assault.  The #MeToo movement's impact on the entertainment industry crystalized on October 10, 2017 when *The New Yorker*'s investigative reporter Ronan Farrow published an explosive exposé detailing decades' worth of sexual abuse allegations by numerous women at the hands of former

1494757_1

media mogul Harvey Weinstein.  After the allegations came to light, Weinstein was swiftly ousted from The Weinstein Company and charged with rape and other offenses in New York City.

After the Weinstein exposé, Farrow began an extensive investigation into decades of alleged sexual harassment by defendant Moonves and the environment engendered by Moonves that reportedly facilitated ongoing sexual harassment at CBS.  As would be later reported by *The New York Times*, "CBS's board knew – or should have known – about potential problems" with defendant Moonves soon after Farrow's first exposé broke in October 2017, as "[r]umors had proliferated almost immediately after *The New York Times* and *The New Yorker* published their prizewinning exposés . . . in October." *Lantz* Complaint at ¶11.  Indeed, defendants CBS and Moonves knew there was plenty for Farrow to discover.  For instance, in November 2017, a woman filed a criminal complaint with the Los Angeles Police Department (the "LAPD") claiming defendant Moonves had forced her to perform oral sex on him in the 1980s. And as the recent *The New York Times* and *The Wall Street Journal* articles confirmed, defendant Moonves knew about this sexual harassment allegation and criminal investigation as early as November 2017, while several CBS Board members knew by January 2018 – months before these facts were revealed to investors.  Despite the fact that defendants CBS, Moonves, and Redstone, as well as several other Board members, knew of these serious allegations and the increasing threat to Moonves's tenure at CBS in November 2017 and January 2018, the Company's risk disclosures remained the same, leaving investors completely unaware of the looming leadership crisis at CBS until late July 2018.

On July 27, 2018, media outlets began reporting that *The New Yorker* would shortly publish an article written by Farrow describing a pattern of sexual harassment alleged by six women against defendant Moonves. The article would also outline allegations of sexual harassment against several

- 3 -

CBS News executives, including Jeffrey Fager, the long-time head of 60 Minutes.  On this news, CBS's stock price fell over 6% on unusually heavy volume.

On August 6, 2018, *The New Yorker* published the online exposé by Farrow detailing allegations of years of sexual assault against defendant Moonves by his co-workers at CBS and describing how, under his leadership, CBS had facilitated the sexual harassment of scores more women, including company-sanctioned retaliation against victims who spoke up.  Subsequently, on September 9, 2018, *The New Yorker* published a second exposé by Farrow outlining, in even more harrowing detail than the first article, additional sexual harassment and assault allegations against defendant Moonves and further describing CBS's widespread culture of sexual harassment. Within hours of the story's publication, CBS announced that defendant Moonves would be stepping down as the Company's Chairman and CEO, causing CBS's stock price to decline further.

Three days later, on September 12, 2018, CBS ousted 60 Minutes head Jeffrey Fager for sending a threatening text message to a CBS reporter investigating allegations that he had fostered a culture of harassment at the Company. Later that day, a *New York Times* article revealed that defendant Moonves had actively concealed the LAPD's November 2017 criminal sexual assault investigation. Even worse, the article revealed that, at the time that one of Moonves's accusers was threatening to go public, Moonves was actively trying to find the woman a job at CBS to ensure her silence.

On September 28, 2018, CBS disclosed that it had "received subpoenas from the New York County District Attorney's Office and the New York City Commission on Human Rights" regarding "the allegations in recent press reports about CBS's former Chairman and Chief Executive Officer, CBS News and cultural issues at all levels of CBS," and that the "New York State Attorney General's Office ha[d] also requested information about these matters."  *Lantz* Complaint at ¶18.

- 4 -

As a result of defendants' wrongful acts and omissions and the decline in CBS's stock value, class members have suffered significant losses and damages.

## III.     ARGUMENT

### A.     The Related Actions Should Be Consolidated for All Purposes

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. §78u-4(a)(3)(B)(ii).  "Under Federal Rule of Civil Procedure 42(a), when separate actions before a court involve a common question of law or fact, a court is empowered to 'consolidate the actions.'" *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *3 (S.D.N.Y. Mar. 13, 2018).[3]  "In securities actions in particular, district courts consolidate cases when complaints are based on the same set of public statements and disclosures and there are common questions of law or fact."  *Id.* (consolidating related securities cases).

The Related Actions present nearly identical factual and legal issues, raise identical claims, and name common defendants.  Because the Related Actions pending before this Court are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits.  Thus, consolidation is appropriate here.  *See id.*

### B.     The Pension Trust Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Securities Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published

---

[3]     Unless otherwise noted, all emphasis is added and citations are omitted.

1494757_1

"in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."  15 U.S.C. §78u-4(a)(3)(A)(i).

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that –

(aa)    has either filed the complaint or made a motion in response to a notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Trust meets each of these requirements and should be appointed Lead Plaintiff.

### 1.    This Motion Is Timely

On August 27, 2018, notice of the first-filed complaint was published on *Globe Newswire* and advised class members of the pendency of the action, the alleged claims, the class definition, and the option of moving the Court to be appointed as lead plaintiff by October 26, 2018.  *See* Declaration of David A. Rosenfeld in Support of Construction Laborers Pension Trust for Southern California's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A.  Notice of the filing of the *Lantz* Complaint was also published to investors.  *See* Rosenfeld Decl., Ex. B.  Because the Pension Trust's motion has been filed by the statutory deadline, the Pension Trust is eligible for appointment as lead plaintiff.

### 2. The Pension Trust Has the Largest Financial Interest in the Relief Sought by the Class

The *Samit* Complaint alleges a February 14, 2014 through July 27, 2018 class period while the *Lantz* Complaint alleges a November 3, 2017 through July 27, 2018 class period. Given this disparity, the Court must assess which Class Period to use to determine financial interest.

In this regard, the PSLRA vests the Court with the discretion to "determin[e]" which investor "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). And in exercising this discretion, district courts recognize "[t]here is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination"). To guard against such gamesmanship, district courts employ a "plausibility" or "obviously frivolous" test to assess the propriety of the alleged class periods. *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (using plausibility test to determine proper class period at lead plaintiff stage); *MGIC*, 256 F.R.D. at 625 (adopting "obviously frivolous" test at lead plaintiff stage); *BP*, 758 F. Supp. 2d at 434 (same).[4] "This standard is appropriate because at this time, just as with a motion to dismiss, the Court must accept the allegations in the Complaint as true as long as the allegations are plausible in light of competing inferences that may be drawn from those same

---

[4]   Importantly, courts acknowledge that such assessments are not "binding determinations regarding the proper class period as part of the lead-plaintiff analysis." *MGIC*, 256 F.R.D. at 624; *Centerline*, 2008 WL 1959799, at *4 ("It would be inappropriate at this stage in the litigation to make any determination about the merits of the claims.").

- 7 -

allegations." *Centerline*, 2008 WL 1959799, at *3.  Accordingly, "[f]or purposes of selecting a lead

plaintiff, the Court [should] use the longest noticed class period unless the factual allegations

supporting that period are 'obviously frivolous'" or implausible.  *BP*, 758 F. Supp. 2d at 433.[5]

Assuming the truth of the facts alleged, the *Samit* Complaint pleads no facts supporting

February 14, 2014 – or any date before November 2017 – as a plausible date to begin the class

period.  *See Centerline*, 2008 WL 1959799, at *3.  Specifically, the *Samit* Complaint alleges that

CBS made identical false and misleading statements in its Forms 10-K filed with the Securities and

Exchange Commission on February 14, 2014 (¶¶19-20), February 13, 2015 (¶¶24-25 and ¶¶28-29),

February 16, 2016 (¶¶32-33), February 17, 2017 (¶¶36-37), and February 20, 2018 (¶¶40-41).  The

*Samit* Complaint also alleges that CBS made identical false statements in its Proxy Statements filed

with the SEC on April 11, 2014 (¶¶21-23), April 10, 2015 (¶¶26-27), April 15, 2016 (¶¶30-31 and

¶¶34-35), April 7, 2017 (¶¶38-39), and April 6, 2018 (¶¶42-43).  The *Samit* Complaint alleges that

these statements were all false for the same four reasons.  *See* ¶44.  The *Samit* Complaint solely

relies on two July 27, 2018 articles in *The New Yorker* and *The New York Times* (*see* ¶45), neither of

which support an allegation pre-dating November 2017.  *See* Rosenfeld Decl., Exs. C-D.[6]  As such,

what is entirely missing from the *Samit* Complaint is ***any*** plausible allegation that ***any*** of the

statements before November 2017 were materially false and/or misleading ***when made***.  *See*

---

[5]    While the *BP* court determined that neither period asserted in that case was "obviously
frivolous," the court nonetheless appointed a separate lead plaintiff for both the long and short
periods because the movant with the largest loss in the longer period had gains during the short
period, wished to assert a different theory of the case than the other plaintiffs did, and "[b]ecause of
these divergent theories, [that plaintiff] might not have an interest in vigorously pursuing the claims
central to the . . . shorter class period."  *See* 758 F. Supp. 2d at 438.

[6]    Further confirming the implausibility of the four-year class period, *The New York Times* reported
today that two CBS board members first asked a lawyer to interview Mr. Moonves in January 2018,
with a second, more formal investigation commencing in April 2018.  *See* Rosenfeld Decl., Ex. E.

- 8 -

*Centerline*, 2008 WL 1959799, at \*3 (assessing complaint allegations under plausibility standard and finding no "facts whatsoever that would support an inference that these statements were false when made" in the complaint).

In contrast, the *Lantz* Complaint extensively details numerous ***facts*** supporting a plausible inference that beginning in October 2017, defendants knew, or recklessly disregarded, that their statements beginning in November 2017 were materially false or misleading when made, including:

> As later reported by *The New York Times* on July 31, 2018, "***CBS's board knew – or should have known – about potential problems" with defendant Moonves soon after Farrow's first exposé broke in October 2017***, as "[r]umors had proliferated almost immediately after *The New York Times* and *The New Yorker* published their prizewinning exposés . . . ***in October***"; those rumors only intensified ***in November 2017*** after Charlie Rose was fired from CBS; and "***[b]y December [2017], CBS executives had been told that reporters for The Times and The Wall Street Journal were asking around about sexual-harassment allegations involving Mr. Moonves***." And, as the *Los Angeles Times* reported on August 2, 2018, "***CBS board members were aware late last year that multiple news organizations were looking into Moonves' conduct*** in the wake of the Harvey Weinstein scandal, which exploded in October."

*Lantz* Complaint at ¶11. And, "[a]s recent *The New York Times* and *The Wall Street Journal* articles have now confirmed, ***defendant Moonves knew about this sexual harassment allegation and criminal investigation as early as November 2017***, ***while several CBS Board members***, including Shari Redstone ("Redstone") (president of CBS's controlling shareholder, National Amusements, Inc.), ***knew by January 2018 – months before these facts were revealed to investors***." *Id.* at ¶12. And, on September 12, 2018, a *New York Times* article revealed that not only had defendant Moonves "***actively concealed the LAPD's November 2017 criminal sexual assault investigation***," "at the time that one of Moonves's accusers was threatening to go public, Moonves was actively trying to find the woman a job at CBS to ensure her silence." *Id.* at ¶17; *see also* ¶¶38-64, 74. As such, the *Lantz* Complaint alleges numerous ***facts*** permitting the Court to plausibly conclude that the

- 9 -

class period can begin in November 2017 for the purposes of assessing the movants' financial interest.

As in *Centerline*, "[t]his is not to say that plaintiffs may never prove that [defendants] violated the federal securities laws earlier than [November 2017]." 2008 WL 1959799, at *4. "It would be inappropriate at this stage in the litigation to make any determination about the merits of the claims." *Id.*[7] "However, the appropriate standard here is plausibility, not possibility." *Id.* As in *Centerline*, the *Samit* Complaint "pleads no facts" that make starting the class period before November 2017 "plausible." *Id.* at *3; *Brodi v. GoPro, Inc.*, 2016 WL 1718217, at *2 (N.D. Cal. Apr. 28, 2016) (declining to use longest class period at lead plaintiff stage where complaint contained no plausible facts to support allegations). Consequently, the Court should use the *Lantz* Complaint's November 3, 2017 through July 27, 2018 Class Period to assess the movants' financial interests.

During the November 3, 2017 through July 27, 2018 Class Period, the Pension Trust purchased 34,261 shares of CBS stock and suffered approximately $133,541 in losses as the price of CBS stock declined. *See* Rosenfeld Decl., Exs. F-G. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest during this Class Period. Therefore, the Pension Trust satisfies the PSLRA's prerequisite of having the largest financial interest.

---

[7]    The Pension Trust emphasizes that the complaints' allegations are just that, and acknowledges that defendants will undoubtedly take a different view of the allegations at the appropriate juncture. In challenging the appropriateness of the allegations and class period in the *Samit* complaint as compared to the *Lantz* complaint, the Pension Trust is not seeking a conclusive factual determination that might prejudice defendants' rights to challenge a consolidated complaint on the merits.

1494757_1

### 3.     The Pension Trust Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements." *Micholle*, 2018 WL 1307285, at *6.

"With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Id.* "The adequacy requirement is satisfied where the proposed lead plaintiff 'fairly and adequately protect[s] the interests of the class.'" *Id.* "The presumptive lead plaintiff meets this requirement when this plaintiff: (1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Id.* "Additionally, courts have a preference for appointing institutional investors as lead plaintiffs." *Id.*

Here, the Pension Trust alleges that it purchased CBS stock during the Class Period in reliance on defendants' allegedly materially false and misleading statements and omissions and suffered damages resulting from the artificially inflated price of CBS stock.  In addition, the Pension Trust, an institutional investor, has evidenced its willingness and ability to serve as lead plaintiff in this case. *See* Rosenfeld Decl., Ex. F.  The Pension Trust is not aware of any conflict between itself and the putative class members.  Finally, the Pension Trust has retained Robbins Geller as counsel, a law firm with vast experience prosecuting securities class actions. *See* Rosenfeld Decl., Ex. H.

1494757_1

Because the Pension Trust filed a timely Motion, has a large financial interest in the relief sought by the class, and is typical and adequate of the putative class, the Court should adopt the presumption that it is the presumptive lead plaintiff.

### C.      The Court Should Approve the Pension Trust's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  The Pension Trust has selected Robbins Geller to serve as lead counsel in this case.

Robbins Geller, a 200-attorney firm with offices nationwide and in this District, regularly practices complex securities litigation and has recovered tens of billions of dollars on behalf of injured investors in securities class actions like this.  *See* Rosenfeld Decl., Ex. H.  The Firm's recoveries on behalf of shareholder classes include some of the largest in history, including $7.2 billion recovered in *In re Enron Corp., Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (the largest securities class action recovery ever) and $1.575 billion recovered in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.) (the largest securities class action recovery following a trial).  *Id.*  With hundreds of highly skilled attorneys and legal professionals, including forensic accountants, economists, damage analysts, investigators, and paralegals, Robbins Geller provides high quality attention and professionalism to each case and client.  District courts throughout the country, including this Court, have recognized Robbins Geller's experience in litigating complex securities class actions and appointed Robbins Geller attorneys to lead roles in landmark complex class action securities cases such as this.  *See, e.g., Patel v. L-3 Commc'ns Holdings Inc.*, No. 1:14-cv-06038-VEC, ECF No. 23 at 4 (S.D.N.Y. Oct. 20, 2014) (Caproni, J.) (appointing Robbins Geller as lead counsel and "'agree[ing] with other courts in this district that Robbins Geller is "qualified, experienced, and able to conduct the litigation"'"); *Micholle*, 2018 WL

1494757_1

1307285, at *10 (finding that the "attorneys at [Robbins] Geller Rudman & Dowd LLP have substantial experience with securities litigation and securities class actions" and approving institutional investor's selection of Robbins Geller as lead counsel in securities case); *Jones v. Pfizer, Inc.*, No. 1:10-cv-03864-AKH, ECF No. 502, Transcript of Proceedings at 42-43 (S.D.N.Y. July 30, 3015) ("Without the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems. So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . . You did a really good job. Congratulations."); *see also* Rosenfeld Decl., Ex. H.

As such, the Pension Trust's selection of Robbins Geller is reasonable and should be approved.

## IV.    CONCLUSION

The Court should consolidate the Related Actions because they present nearly identical factual and legal issues, raise identical claims, and name common defendants.  In addition, the Pension Trust has satisfied each of the PSLRA's requirements for appointment as Lead Plaintiff.  As such, the Pension Trust respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of counsel.

DATED:  October 26, 2018                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

*s/ DAVID A. ROSENFELD*
DAVID A. ROSENFELD

- 13 -

1494757_1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[*Proposed] Lead Counsel for Plaintiff*

- 14 -

1494757_1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 26, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ DAVID A. ROSENFELD*

DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
     & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:  drosenfeld@rgrdlaw.com

1494757_1