# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, GENE SAMIT and JOHN LANTZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Consolidated Action No. 1:18-cv-07796 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORAL ARGUMENT REQUESTED** |
| CBS CORPORATION et al., | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LESLIE MOONVES'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ................................................................... 2

      A.   Moonves Signed An Aspirational Letter In The Introduction Of CBS's Business Conduct Statement .......................................... 2

      B.   Moonves Adopted CBS's Statements That Talented Executives Are An Important Part Of CBS's Business................................. 4

      C.   Moonves Made General Comments About Workplace Sexual Harassment And CBS's Financial Performance ......................... 5

ARGUMENT ....................................................................................... 5

   I.   PLEADING REQUIREMENTS FOR A SECTION 10(b) CLAIM...................... 5

   II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(b)............... 7

      A.   Plaintiff Fails To Allege Facts Giving Rise To Any Actionable Omission ..................................................................... 7

      B.   Plaintiff Cannot Base Its Claim On Statements Of Optimism Or Puffery.................................................................... 9

   III.   PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER ................................................................ 10

      A.   Motive Cannot Be Inferred From Pre-Arranged Stock Sales ................. 10

      B.   Plaintiff Fails To Allege Circumstantial Evidence To Support A Strong Inference Of Scienter ................................. 11

   IV.   BECAUSE PLAINTIFF FAILS TO ALLEGE A PRIMARY VIOLATION UNDER SECTION 10(b), ITS SECTION 20(a) CLAIM MUST ALSO BE DIMISSED ............................................ 17

CONCLUSION.................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
  505 F. Supp. 2d 662 (D. Colo. 2007)....................................................................14

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)..................................................................................6

*Barrett v. PJT Partners, Inc.*,
  No. 16-cv-2841, 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017) (Caproni, J.) ...........................2

*Bettis v. Aixtron SE*,
  No. 16 Civ. 00025, 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016).........................................12

*Fries v. N. Oil & Gas, Inc.*,
  285 F. Supp. 3d 706 (S.D.N.Y. 2018)............................................................... 13-14

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) (Caproni, J.) ...................................................6

*Hershfang v. Citicorp*,
  767 F. Supp. 1251 (S.D.N.Y. 1991)......................................................................13

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008)....................................................................15

*In re Gildan Activewear, Inc. Sec. Litig.*,
  636 F. Supp. 2d 261 (S.D.N.Y. 2009)...............................................................10, 11

*In re Lions Gate Entm't. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016).....................................................................14

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014).....................................................................11

*In re Merrill Lynch & Co., Inc.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................................................................2

*In re Pfizer, Inc. Sec. Litig.*,
  538 F. Supp. 2d 621 (S.D.N.Y. 2008)...................................................................10

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009)............................................................... 11-12

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
  F.3d 199 (2d Cir. 2016)................................................................................16

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016) ................................................................8

*In re UBS AG Sec. Litig.*
    No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ........................12

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...........................................................................6, 11

*Kleinman v. Elan Corp.*,
    706 F.3d 145 (2d Cir. 2013) ...............................................................................17

*Lapin v. Goldman Sachs Grp., Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006) .................................................................17

*Lopez v. CTPartners Exec. Search, Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) ..................................................................8, 9

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty.*
    *Ret. Ass'n v. MDC Partners, Inc.*,
    No. 15 CIV. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ...............12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) .................................................................................6

*Panther Partners, Inc. v. Ikanos Comm's, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) .................................................................12

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of*
    *Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ............................................................13, 14

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard*
    *Co.*,
    845 F.3d 1268 (9th Cir. 2017) ....................................................................9, 14, 15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ..............................................................................6, 7

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) .............................................................................................6

*Schaffer v. Horizon Pharma PLC*,
    No. 16-CV-1763, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .............................15

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ...................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................6, 16

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)...............................................................................8

**STATUTES & RULES**

15 U.S.C. § 78j(b) .......................................................................................... *passim*

15 U.S.C. § 78u-4(b)(2) ..................................................................................6

17 C.F.R. § 240.10b5-1 ...................................................................................11

17 C.F.R. § 240.12b-23..................................................................................3, 4

Fed. R. Civ. P. 9(b) ......................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)..................................................................................1

Defendant Leslie Moonves respectfully submits this memorandum of law in support of his motion to dismiss the Amended Complaint filed by Lead Plaintiff Construction Laborers Pension Trust for Southern California (the "Amended Complaint" or "AC"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA").

## PRELIMINARY STATEMENT

The Court should dismiss the Amended Complaint against Moonves because it fails adequately to allege either that he made false statements or that he acted with scienter.

The crux of the Amended Complaint's allegations against Moonves are two-fold.  First, Plaintiff alleges that several routine statements, including CBS's warning about the loss of key personnel and Moonves's comments on CBS's financial results press release, are false and misleading because Moonves's supposed conduct and CBS's supposed culture amounted to an "undisclosed risk that Moonves would have to leave his positions at the Company."  AC ¶ 6. Second, Plaintiff infers that CBS's customary Business Conduct Statement ("BCS"), CBS's generic legal proceeding disclosure, and Moonves's off-the-cuff remarks about the cultural impact of the #MeToo movement are misleading because of the supposed conduct of Moonves and CBS employees more generally.  *Id.* ¶¶ 123, 125, 128.  Plaintiff ignores the innocuous context of these statements and in any event fails to establish that any of these generic statements are false or misleading, much less that they support a claim of securities fraud.

Plaintiff's scienter arguments fare no better.  Plaintiff's allegations amount to claiming Moonves's statements were false because he should have known his employment at CBS was in jeopardy and, without him, CBS's "financial stability and success" would be impacted.  *Id.* ¶ 3. But to infer such scienter, Plaintiff improperly relies on an incomplete internal investigation and newspaper articles about the #MeToo movement to imply that otherwise dubious allegations

regarding decades old personal conduct somehow are the makings of securities fraud.  Not only is it implausible that Moonves could have foreseen his departure from CBS at the time of the alleged statements, but this argument relies on Moonves's supposed knowledge of mere allegations of past wrongdoing, largely unconnected to CBS.  As the Amended Complaint establishes, Moonves maintains that the allegations against him of misconduct more than a decade ago are not true and that he did not act improperly.  *Id.* ¶¶ 145, 149.  Thus, at the time of Moonves's statements, he had no reason to believe his departure was imminent and, in fact, he believed the truth of his statements. The Amended Complaint does not allege otherwise.  This is precisely the type of fraud by hindsight lawsuit that the heightened requirements of the PSLRA were designed to weed out at the pleading stage.  Accordingly, the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

### A.  Moonves Signed An Aspirational Letter In The Introduction Of CBS's Business Conduct Statement

Plaintiff attempts to attribute to Moonves statements included in the BCS by virtue of CBS's Proxy Statements, which inform investors that such statements were available on CBS's website.  AC ¶¶ 100-04, 119-20, 134-35.  The Proxy Statements describe the BCS as containing CBS's "commitment to providing equal employment opportunities and a bias-free and harassment-free workplace environment," but the descriptions make no mention of sexual conduct or

---

[1]  Moonves denies the allegations in the Amended Complaint and reserves the right to challenge the allegations if the Court denies this motion.  The background contained herein is drawn from allegations in the Amended Complaint, which are accepted as true solely for the purpose of this motion.  *See Barrett v. PJT Partners, Inc.*, No. 16-cv-2841, 2017 WL 3995606, at *3 (S.D.N.Y. Sept. 8, 2017) (Caproni, J.).  The background also is drawn from "public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 357 (S.D.N.Y. 2003).

misconduct.  Ex.[2] 11 (Apr. 2018 Proxy) at 5.[3]  The Proxy Statements did not incorporate the BCS.

As Plaintiff tacitly concedes, the Proxy Statements do not reprint in full the BCS or include it as

an exhibit.  *See* Ex. 11 (Apr. 2018 Proxy); AC ¶¶ 100, 119, 134; *see also* 17 C.F.R. § 240.12b-23

(requirements to incorporate by reference include "[a]n express statement that the specified matter

is incorporated by reference" and "copies of any information . . . incorporated . . . shall be filed as

an exhibit").

      Moreover, Plaintiff does not and cannot allege that Moonves signed the Proxy Statements.

*See generally* AC.[4]  In fact, CBS's Proxy Statements were signed each year by its Corporate

Secretary, not Moonves.  Ex. 11 (Apr. 2018 Proxy) at 90.  Although Moonves signed a letter at

the beginning of the BCS, that letter is not in the Proxy Statements.  AC ¶ 102; Ex. 11 (Apr. 2018

Proxy) at 5.

      In any event, Moonves's letter to CBS employees at the beginning of the BCS made

generalized, aspirational statements that CBS was "*committed* to maintaining the highest standards

in everything we do," that CBS was "*guid[ed]*" by "a strong and established ethical code," and

that all CBS employees had "a responsibility to uphold the highest standards of ethical and

appropriate business actions."  Ex. 12 (BCS) (emphasis added); *see* AC ¶ 102.  Moonves did not

state in the letter that all CBS employees had complied with the BCS in all instances and did not

---

[2] The term "Ex." refers to the exhibits annexed to the Declaration of Mary Eaton in Support of the Motion by CBS Corporation and Certain Individual Defendants to Dismiss the Amended Complaint.

[3] The current BCS is dated 2016, and its adoption was disclosed as early as April 2016 on the April 2016 Proxy, indicating the document, and all statements therein, predate the class period.

[4] Moonves signed only an opening letter at the beginning of each year's Proxy Statement, inviting Class A shareholders to attend CBS's annual shareholders' meeting. *See* Ex. 11 (Apr. 2018 Proxy). These letters made no representations about, or comments on, the accuracy of the contents of the Proxy Statements. *Id.*

address CBS's historical enforcement or application of the policy.  Ex. 12 (BCS).  The letter did not comment upon Moonves's own compliance with the policy and did not address the then inchoate allegations of his supposed past conduct.  *Id.*  Again, Plaintiff does not and cannot allege that Moonves's letter said any of these things.  AC ¶ 102.

### B.    Moonves Adopted CBS's Statements That Talented Executives Are An Important Part Of CBS's Business

Plaintiff also alleges that Moonves's statements include CBS's annual Form 10-K and Form 10-Q filings.  In February of each year between 2016 and 2018, CBS's Form 10-K included statements describing the importance of talented executives to its past and future success.  AC ¶¶ 95, 115, 127.[5]  In particular, these statements explained that CBS's success "depends upon the continued efforts, abilities and expertise of its chief executive officer and other key employees," that those employees' "unique combination of skills and experience . . . would be difficult to replace," and that the future loss of those employees "could have a material adverse effect on the Company."  *Id.*  Plaintiffs allege that these ***warnings*** to investors about the importance of executive talent and the potential impact of their loss were incorporated by reference into each of CBS's Form 10-Qs filed each quarter between May 2016 and May 2018.  *Id.* ¶¶ 96-97, 114, 116-17, 122, 139.[6]

As CBS's CEO, Moonves provided annual certifications pursuant to the Sarbanes-Oxley Act that were included as exhibits to CBS's Form 10-Ks and 10-Qs.  These certifications explained that the Form 10-Ks and 10-Qs did not contain any false statements of material fact or misleading

---

[5] The statements in CBS's Form 10-K filed with the SEC in February 2016 were made outside the class period, as were the statements in CBS's Form 10-Qs filed in May and July 2016—all of which Plaintiff expressly acknowledges.  AC ¶¶ 95-97.

[6] CBS's Form 10-Qs did not expressly incorporate the Form 10-Ks by reference, nor were the Form 10-Ks attached to the Form 10-Qs as exhibits.  *See* 17 C.F.R. § 240.12b-23(b).

material omissions, and that the financial information contained therein fairly presented CBS's financial condition in all material respects. AC ¶ 29. *See also, e.g.*, Ex. 4 (Feb. 2018 Form 10-K) at Exhs. 31.A & 32.A; Ex. 5 (May 2016 Form 10-Q) at Exhs. 31.A & 32.A. Plaintiff has made no allegations disputing the financial information in CBS's SEC filings. *See generally* AC.

### C. Moonves Made General Comments About Workplace Sexual Harassment And CBS's Financial Performance

Finally, Plaintiff alleges that Moonves directly made two supposedly misleading statements in late 2017 and early 2018. First, Plaintiff alleges that Moonves commented generally on the impact of the #MeToo movement during an interview with *Variety* in November 2017. AC ¶¶ 8, 125. Moonves did not make any statement—nor was he asked—about his own sexual conduct or the conduct of others at CBS during this interview, and Plaintiff does not allege that he did. *See id.*

Second, Plaintiff alleges that Moonves commented on CBS's strong financial performance for the fourth quarter of 2017 in a February 2018 press release. *Id.* ¶ 126. This commentary had nothing to do with—and did not mention—Moonves's own sexual conduct, allegations of sexual harassment at CBS, or the #MeToo movement. Ex. 7 (Feb. 15, 2018 Form 8-K) at Exh. 99 at 1. Again, Plaintiff does not allege that it did. AC ¶ 126.

## ARGUMENT[7]

## I. PLEADING REQUIREMENTS FOR A SECTION 10(b) CLAIM

To state a claim under Section 10(b) of the Exchange Act, a "plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's

---

[7] Moonves adopts solely the legal arguments in the memorandum of law filed on behalf of CBS and the other defendants in this action as to why Plaintiff's claims against CBS and all other defendants should also be dismissed.

reliance was the proximate cause of its injury." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).  Securities fraud claims are subject to the heightened pleading requirements of the PSLRA, which require Plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (alteration in original).  Federal Rule of Civil Procedure 9 requires Plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).  Conclusory and unsupported allegations are insufficient and must be disregarded. *ATSI*, 493 F.3d at 99.

The PSLRA also requires Plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," taking into account plausible opposing inferences.  15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).  It is not sufficient to "allege facts from which an inference of scienter rationally *could* be drawn." *Tellabs*, 551 U.S. at 323 (emphasis in original).  Rather, an inference of scienter "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 324.  The Amended Complaint fails to satisfy these stringent pleading requirements and must be dismissed.

Further, the U.S. Supreme Court has held that federal securities laws do "not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp.3d 155, 171 (S.D.N.Y. 2015) (Caproni, J.) ("[S]ection 10(b) was not designed to regulate corporate mismanagement.").  Plaintiff's allegations amount to, at most, claims of internal

corporate mismanagement from many years ago.  Such allegations fail to assert a securities fraud and should be dismissed on this ground as well.

## II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(b)

### A.     Plaintiff Fails To Allege Facts Giving Rise To Any Actionable Omission

Plaintiff cannot adequately allege that Moonves's statements were false.  Indeed most of Moonves's statements are generalized, and the Amended Complaint illustrates that Plaintiff actually *agrees* with those statements.  Specifically, the bulk of the statements on which Plaintiff attempts to build its claim are generic statements from CBS's SEC filings that the company's success depended on the unique talents of its executives, including Moonves.  AC ¶¶ 95-97, 114-17, 122, 139.[8]  Plaintiff does not dispute this statement.  To the contrary, it spends multiple pages of the Amended Complaint recounting Moonves's rise to prominence in the entertainment industry, referring to Moonves as CBS's "secret weapon" and "central to CBS's success."  *Id.* ¶¶ 3, 37-42.  As part of that narrative, Plaintiff describes CBS's "33rd consecutive quarter of EPS [earnings per share] growth" with Moonves at the helm, yet attempts to paint as misleading the almost exact same description of the company's financial performance in Moonves's February 2018 comment to CBS's press release.  *Compare id.* ¶ 42, *with id.* at ¶ 126.[9]

---

[8] Plaintiff also asserts that CBS's description of certain legal proceedings in its February 2018 Form 10-K was "materially false and misleading."  AC ¶¶ 128-29.  Since the accompanying descriptions of *why* this statement was supposedly misleading do not identify a single legal proceeding that should have been disclosed, the description in the Form 10-K cannot possibly be false or misleading.  *See id.* ¶¶ 98, 123.  In fact, there were no such legal proceedings regarding Moonves's alleged misconduct at any time during the class period.

[9] The Amended Complaint mentions two public statements that Moonves made in reaction to *The New Yorker's* publication of two articles discussing his alleged personal sexual misconduct from between 13 and 35 years ago.  AC ¶¶ 145, 149.  Plaintiff does not and cannot allege that these statements were misleading, so they cannot serve as the basis for Plaintiff's claim.  *See Rombach*, 355 F.3d at 170.

Plaintiff similarly fails to allege the falsity of the sole statement it identifies that Moonves made about the #MeToo movement or sexual harassment more generally.  Moonves's November 2017 interview with *Variety*—during which he was not asked a single question about his own conduct—included only his opinions.  *See* AC ¶¶ 8, 125.  Specifically, the Amended Complaint quotes Moonves as saying: "It's a watershed moment . . . [i]t's important that a company's culture will not allow for this.  And that's the thing that's far-reaching.  There's a lot we're learning. There's a lot we didn't know."  *Id.*  He made no objective claims, much less a guarantee of his or CBS's conduct.  *Id.*  Plaintiff has not alleged that Moonves did not actually hold the beliefs he described about the scope of the #MeToo movement or that his genuine stated beliefs were at all relevant, much less material, to an investor.  *See Tongue v. Sanofi*, 816 F.3d 199, 209-10 (2d Cir. 2016); AC ¶¶ 98, 123, 125, 129.  The Amended Complaint therefore fails to allege that any statement in this interview was false.

Since Plaintiff cannot show that any of these statements is false, it must demonstrate that Moonves either (a) had a duty to disclose additional information or (b) omitted information related to these statements that rendered them materially misleading.  Plaintiff fails to do this as well.  A company has no generalized duty to disclose alleged corporate mismanagement, and therefore Plaintiff must identify a specific statutory duty to disclose such information.  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016).  The sole source of such a duty that Plaintiff has offered, Item 303 of Regulation S-K, does not impose a duty to disclose an alleged culture of sexual harassment in the workplace, even if the information might eventually become public through news reports.  *Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 35-36 (S.D.N.Y. 2016) (denying applicability of Item 303 where the defendant's culture of harassment was eventually the subject of an exposé in the *New York Post*).  Courts faced with similar

accusations that executives engaged in sexual misconduct—which here allegedly occurred decades ago—have held that the lack of disclosure of such allegations is not actionable. *Id.* at 29-30 ("The securities laws . . . decidedly do *not* prohibit *any* misrepresentation . . . of *im*material facts, even if it induces reactions from investors that, in hindsight or otherwise, make the misrepresentation appear material." (emphasis in original) (internal quotation marks omitted)); *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) (affirming motion to dismiss Section 10(b) claim based in part on CEO's undisclosed sexual harassment). Those principles are particularly compelling here since the allegations are all more than a decade old and largely unrelated to the period of time that Moonves worked at CBS.

### B. Plaintiff Cannot Base Its Claim On Statements Of Optimism Or Puffery

Moonves's statements in his letter introducing the BCS also are quintessential puffery that "[a] reasonable stockholder would not 'consider . . . important in deciding whether to buy or sell shares of stock.'" *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). Since the letter made no comment on Moonves's own compliance with the BCS or even CBS's past success enforcing the policy generally, its statements about CBS's commitment to the policy were "transparently aspirational." *Hewlett-Packard Co.*, 845 F.3d at 1276, 1278. Exchange Act claims built on generalized policies attesting to a company's honesty and integrity must be dismissed. *See Lopez*, 173 F. Supp. 3d at 28-29.[10] Similarly, Moonves's comments during his interview with *Variety* simply described the zeitgeist of the #MeToo movement without making any concrete statements about CBS or his personal conduct. AC ¶¶ 8, 125.

---

[10] Although Plaintiff alleges that CBS's Proxy Statements mention a Supplemental Code of Ethics for Senior Financial Officers in a discussion related to the BCS, the Amended Complaint does not allege that Moonves made any public statement about this ethics policy analogous to the letter he wrote about the BCS. *See* AC ¶ 105.

### III.     PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiff's scienter allegations also are defective.  Plaintiff must "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind." *In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 635 (S.D.N.Y. 2008) (alteration in original).  In the Second Circuit, a complaint may satisfy this requirement "by alleging facts (1) showing that defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior." *Id.*  Plaintiff's allegations undercut any such inference.

#### A.     Motive Cannot Be Inferred From Pre-Arranged Stock Sales

Plaintiff alleges Moonves had motive to commit fraud exclusively by reference to his sale of 2,640,000 shares of CBS stock during the putative class period.[11]  AC ¶¶ 91-92.  But insider trading can imply scienter only if the timing and amount of the defendant's trading were "unusual or suspicious."  *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009).  Nowhere does the Amended Complaint allege that Moonves's sales deviated from his normal trading practices or that there was any connection between the timing of the sales and the dissemination of the alleged misstatements.  Indeed, over half of the 2,640,000 shares were sold before November 2017, when Moonves supposedly first became aware of allegations against him. *See* AC ¶ 92.  And Moonves's trades stopped in May 2018 and did not occur at all during the summer and fall of 2018, when the exposé articles about his alleged misconduct were published. *Id.* ¶¶ 63, 91, 149.

More importantly still, the Amended Complaint omits that ***every*** stock sale at issue was

---

[11] These 2,640,000 shares sold by Moonves during the putative class period includes the 1,000,000 shares sold by Moonves between mid-December 2017 and May 2018, the period in which Plaintiff alleges Moonves was aware of percolating media inquiries.  AC ¶ 92.

made pursuant to a Rule 10b5-1 trading plan.  Trades "made pursuant to a non-discretionary Rule 10b-5-1 trading plan . . . undermine[] any allegation that the timing or amounts of the trades was unusual or suspicious." *Gildan*, 636 F. Supp. 2d at 272; *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014) ("Trades made pursuant to a Rule 10b5-1 trading plan do not give rise to a strong inference of scienter."); Ex. 32 (Moonves Form 4s).  Moreover, it is undisputed that even after those sales, Moonves remained a very substantial holder of CBS stock.

### B.      Plaintiff Fails To Allege Circumstantial Evidence To Support A Strong Inference Of Scienter

Because Plaintiff fails to allege that Moonves had any cognizable motive to commit securities fraud on investors, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.  Under this alternative theory, a plaintiff must show that the defendant's conduct was "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Id*.  The Amended Complaint is devoid of facts supporting an inference of Moonves's scienter, much less the heightened standard applicable here.

### 1.      Moonves's Position As CEO Does Not Amount to Scienter

Plaintiff alleges an inference of Moonves's scienter because he was aware of "widespread conduct" at CBS which supposedly "emanated" from Moonves.  AC ¶¶ 5, 169.  As a preliminary matter, Moonves's role as CEO is not sufficient to establish scienter.  *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 538 (S.D.N.Y. 2009) (finding allegations that defendants "must have known" facts "due to their positions" and "intimate corporate culture" fail to support an inference

of scienter).[12]   Additionally, Moonves could not have been responsible for the alleged sexual misconduct of CBS employees within the class period, by virtue of decades old allegations against him, which if taken as true, predate his time as CEO and by and large predate his tenure at CBS.

### 2.     Moonves's Departure Does Not Give Rise To An Inference of Scienter

The crux of the scienter allegations against Moonves, particularly with regard to the Form 10-K statements, are that he knew he would be departing CBS.  But Plaintiff cannot establish its case through such impermissible "fraud by hindsight."  *See Panther Partners, Inc. v. Ikanos Comm's, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("[a]n earlier statement is not somehow made misleading simply because it failed to foretell a . . . problem which later materialized"); *Bettis v. Aixtron SE*, No. 16 Civ. 00025, 2016 WL 7468194, at *11 (S.D.N.Y. Dec. 20, 2016) (holding that an ultimately unsuccessful transaction is not sufficient to show earlier optimistic statements were fraudulent).  For Moonves to have acted with the requisite scienter at the time the statements were made, he would have had to foresee the confluence of several unpredictable events, including accusations from certain women in his distant past (which he continues to deny), the extensive media coverage thereof, CBS's decision to launch an internal investigation, his own departure from CBS, and CBS's unilateral decision **after** the class period to treat his departure as a termination for cause on alleged grounds that included reasons **other than** sexual misconduct allegations.  AC ¶ 157.[13]  Such speculative allegations based on hindsight are not enough to plead

---

[12] Further, Moonves's mere signing of the Form 10-Ks and other public filings is not dispositive on the element of scienter.  *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 Civ. 6034 (RJS), 2016 WL 5794774, at *22 (S.D.N.Y. Sept. 30, 2016) (finding plaintiff's "bare allegations that certain defendants signed SEC filings" "insufficient" to establish scienter).

[13] To be clear, Moonves's departure in itself does not give rise to an inference of scienter.  *In re UBS AG Sec. Litig.* No. 07 Civ. 11225, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012) (rejecting forced personnel resignations and terminations as support for an inference of scienter).  And Plaintiff alleges no facts connecting Moonves's departure to the alleged securities fraud.

scienter.

### 3. Generalized Allegations Of Sexual Misconduct From Newspaper Articles And CBS's "Investigation" Do Not Give Rise To Scienter

Plaintiff's scienter allegations regarding Moonves's conduct are largely based on media reports of alleged conduct that occurred well ***before*** the putative class period and an internal investigation that concluded ***after*** the putative class period.  *See, e.g.*, AC ¶¶ 18, 49, 55, 56.  This is not—and cannot—be the basis of a claim of securities fraud during the class period.

Plaintiff cobbles together newspaper articles of Moonves's purported conduct.  But this theory amounts to nothing more than ***allegations*** of wrongdoing by third parties.  Courts repeatedly have rejected the use of newspaper and magazine articles to plead scienter.  *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) (granting motion to dismiss and rejecting Plaintiff's use of newspaper and magazine articles to plead scienter); *Hershfang v. Citicorp*, 767 F. Supp. 1251, 1259 (S.D.N.Y. 1991) (granting motion to dismiss when "Plaintiffs have stitched together a patchwork of newspaper clippings and proclaimed the result a tale of securities fraud").  Here, instead of satisfying the rigorous requirement of scienter, Plaintiff relies almost exclusively on articles in *The New Yorker*, *The New York Times* and *The Wall Street Journal*, suggesting that Moonves acted wrongfully decades ago in personal matters unrelated to CBS.  AC ¶¶ 14, 49, 55-56, 78.  In fact, all but one alleged instance occurred before Moonves was CEO, and the majority of the allegations predate his time at CBS.[14]  *Id.* ¶¶ 49, 55-56.  Such ancient and unconnected allegations, which

---

Plaintiff cites CBS's post class period determination regarding the alleged grounds for Moonves's termination, which not only included cooperation with the internal investigation among other factors, but made no reference to Moonves's role in any securities fraud.  AC ¶ 157; Ex. 10 (Dec. 18, 2018 Form 8-K) at Exh. 99 at 1.

[14] Even if this decades old conduct might amount to a violation of some company's policies at the time of such alleged conduct, such a possible violation falls far short of scienter.  *Fries v. N. Oil*

Moonves has denied, are wholly irrelevant to a claim of scienter to commit securities fraud based on the statements made during the purported class period.  In an attempt to conjure up scienter from allegations that are otherwise unrelated to CBS, Plaintiff argues that Moonves "should have known" that the generic statements at issue were false because there was a rising swell in the news known as the #MeToo movement.  AC ¶¶ 7, 44-48 (arguing the #MeToo movement "alters the landscape surrounding sexual misconduct in the workplace").  Plaintiff misunderstands the rigor and focus of the scienter requirement enforcing the securities laws.  Such generalized awareness of unrelated events does not come close to establishing scienter for securities fraud, that is, an intentional attempt to mislead investors during the class period.  *See*, *e.g.*, *Plumbers & Steamfitters*, 694 F. Supp. 2d at 300 (dismissing claim in light of coverage of the 2008 recession; "knowledge of a general economic trend does not equate to harboring" scienter).

Plaintiff also erroneously attempts to create scienter by pointing to CBS's incomplete internal investigation.[15]  Courts around the country repeatedly have held, however, that even ongoing investigations relevant to securities fraud fail to establish recklessness.  *See, e.g., In re Lions Gate Entm't. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 24 (S.D.N.Y. 2016) (holding SEC investigation is insufficient to plead scienter); *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 687-88 (D. Colo. 2007) (granting motion to dismiss despite internal investigation that uncovered CEO's misconduct).  Here, the investigation did not relate at all to any fraud of investors.  And in any event, Plaintiff acknowledges that the investigation was not

---

*& Gas, Inc.,* 285 F. Supp. 3d 706, 722 (S.D.N.Y. 2018) (holding CEO's "alleged violations of the Code of Business Conduct . . . do not establish fraudulent intent"); *Hewlett-Packard Co.*, 845 F.3d at 1278 (finding that where a CEO's conduct was inconsistent with "general ethical values espoused within" company's conduct statement did not amount to scienter).

[15] Moonves obviously disputes both the process and subsequent conclusions of CBS's purported internal investigation.  That dispute is irrelevant to this motion to dismiss.

completed until after the class period.  Consequently, the Amended Complaint rests entirely on unproven allegations against Moonves regarding attenuated personal conduct from many years ago.  AC ¶ 18.[16]  Indeed, as acknowledged in the Amended Complaint, Moonves absolutely denies the CBS Board's subsequent conclusions of cause for dismissal under his contract.  *Id.* ¶¶ 145, 149.  In short, Plaintiff's allegations based upon newspaper articles and an ongoing internal investigation are insufficient to show scienter.  *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763, 2018 WL 481883, at *13 (S.D.N.Y. Jan. 18, 2018) (rejecting Plaintiff's argument that an on-going investigation was "sufficient to give rise to a requisite cogent and compelling inference of scienter").

### 4.    The Amended Complaint Negates An Inference Of Moonves's Scienter

Plaintiff also has failed to plead facts giving rise to an inference of scienter because there can be no liability absent knowledge that the statements at issue were false when made.  *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 470 (S.D.N.Y. 2008) (where knowledge is not in question, "[t]he key . . . is the honest belief of [the defendant] in the truth of information issued to the public").  Plaintiff does not allege that Moonves did not consider himself key to CBS's success, that he thought CBS's financial results would be materially different than as described, that he did not think the polices stated in the BCS were actual policies of CBS, or that he thought the #MeToo

---

[16] Plaintiff also attempts to infer scienter from Moonves's conduct during the internal investigation.  Plaintiff points to newspaper coverage that alleges Moonves "repeatedly lied" and that he "destroyed evidence."  AC ¶¶ 20, 155.  Not only are these unsubstantiated newspaper allegations, but this conduct is unrelated to the purported statements at issue in the claim of securities fraud.  These newspaper allegations relate to how Moonves supposedly interacted with the company's investigators, but say nothing about his alleged intent to deceive ***investors***.  *See Hewlett-Packard Co.*, 845 F.3d at 1271, 1278 (determining an executive's resignation following an internal investigation, where he was found to have been misleading to investigators, insufficient grounds to uphold plaintiffs' § 10(b) claim for conduct inconsistent with a business ethical code).

movement was not a "watershed moment."

Instead, Plaintiff's allegations negate any inference of scienter.  Plaintiff alleges that Moonves has "always understood and respected – and abided by the principle – that 'no' means 'no,'" and he has "never misused [his] position to harm or hinder anyone[]."  AC ¶ 145.  Plaintiff further acknowledges that after the second *The New Yorker* article was published, Moonves said he had "never before heard such disturbing accusations," which he deemed "untrue" and "not consistent with who I am."  *Id.* ¶ 149.  Moonves cannot believe the allegations are untrue while simultaneously believing both that he engaged in sexual misconduct (which he vigorously denies), and that such denied conduct would also cause his departure from CBS.  *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (scienter requires that the defendant "understood that [his] public statements were inaccurate, or [was] 'highly unreasonable' in failing to appreciate that possibility").

When considered "holistically," as required under *Tellabs*, Plaintiff's scienter allegations do not satisfy the PSLRA.  *Tellabs*, 551 U.S. at 326.  The Amended Complaint effectively fails to establish that Moonves sought to mislead investors about CBS.  Even assuming, *arguendo*, that Plaintiff had alleged that Moonves had made a false statement material to CBS investors during the class period—it does not—the more rational and compelling inference is that Moonves genuinely and reasonably believed the generic statements attributed him.  And certainly, Plaintiff has made no showing, much less a compelling one, that Moonves believed he would be departing the company, that there was any truth to the generalized allegations from media articles or that such allegations would give rise to an internal investigation, much less that he was misleading investors about CBS.

IV.     **BECAUSE PLAINTIFF FAILS TO ALLEGE A PRIMARY VIOLATION UNDER SECTION 10(b), ITS SECTION 20(a) CLAIM MUST ALSO BE DIMISSED**

Where, as here, Plaintiff fails to plead a claim for violations of Section 10(b) against Moonves or any other defendant, for the reasons set forth above and in CBS's brief, its Section 20(a) claims must also be dismissed. *Kleinman v. Elan Corp.*, 706 F.3d 145, 156 n.14 (2d Cir. 2013) (affirming dismissal of Section 20(a) claims for failure to plead predicate violation of § 10(b)). Similarly, Plaintiff cannot plead Moonves's culpable participation in a primary violation. *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006).

## CONCLUSION

For the foregoing reasons, Defendant Moonves respectfully requests that this Court dismiss Plaintiff's Amended Complaint with prejudice.

Dated: New York, New York
        April 12, 2019

DECHERT LLP

*/s/* Andrew J. Levander
Andrew J. Levander
Hector Gonzalez
1095 Avenue of the Americas
New York, NY 10036
andrew.levander@dechert.com
hector.gonzalez@dechert.com
(212) 698-3500

*Counsel for Defendant Leslie Moonves*

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on the 12th day of April, 2019, I electronically filed this **Memorandum of Law in Support of Defendant Leslie Moonves's Motion To Dismiss Plaintiff's Amended Complaint For Violations Of The Federal Securities Laws** using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/* Andrew J. Levander
ANDREW J. LEVANDER

*Counsel for Defendant Leslie Moonves*
