WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

July 23, 2019

**VIA ECF**

The Honorable Valerie E. Caproni
U.S. District Court, Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 240
New York, NY 10007

Re: *Samit v. CBS Corporation, et al.*, 18-cv-07796

Dear Judge Caproni:

We write on behalf of Moving Defendants in opposition to Plaintiff's Motion to Strike.[1] (ECF 89.)

Moving Defendants submitted the three challenged exhibits[2] in support of their motion to dismiss for the limited purpose of establishing that the rumored information was publicly available to others. This is fatal to Plaintiff's motion to strike because it is well-settled that the Court may take judicial notice of information published on websites and other public outlets for the purpose of establishing that the information was publicly available. *See, e.g.*, *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming district court's judicial notice of information published on a website "for the purpose of establishing that the information was publicly available"); *Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008) (taking judicial notice of information on website "for the fact of its publication"); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 261–63 (S.D.N.Y. 2019) (taking judicial notice that statements were made on Twitter); *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, 11-cv-6079, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (noting that courts may take judicial notice of content from the Wayback Machine); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."); *Lifeway Foods, Inc. v. Millennium Prods., Inc.*, 16-cv-7099, 2016 WL 7336721, at *1 (C.D. Cal. Dec. 14, 2016) (taking judicial notice of a Twitter post for fact that the information was publicly available).[3]

---

[1] Unless otherwise defined herein, capitalized terms have the same meanings as in the Memorandum of Law in Support of the Motion of CBS Corporation and Certain Individual Defendants to Dismiss the Amended Complaint. (ECF 79 ("Br.").)

[2] The exhibits are a tweet, with accompanying comments, on Twitter by the gossip site, Blind Gossip (ECF 80-16), a report posted on the gossip website naughtygossip.com (ECF 80-17), and a report posted on the gossip site blindgossip.com, as archived on the Wayback Machine (ECF 80-18), all of which published rumors in January 2018 that journalists were looking into potential #MeToo allegations involving a senior CBS executive, allegedly Mr. Moonves. These were not the only sources that published such rumors. *See, e.g.*, Lipstick Alley, "The person they are investigating is as big as Harvey Weinstein!!" (Jan. 12, 2018), https://www.lipstickalley.com/threads/the-person-they-are-investigating-is-as-big-as-harvey-weinstein.1390890/.

[3] *See also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570, 576 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (taking judicial notice that information existed in public domain in determining that defendants did not have any duty to disclose under federal securities laws); *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 37 n.12 (S.D.N.Y. 2016) (taking judicial notice of time and date that *New York Post* article appeared on the Internet).

The cases cited by Plaintiff are not to the contrary. In *In re UBS Auction Rate Securities Litigation*, 08-cv-2967, 2010 WL 2541166, at *14–*15 (S.D.N.Y. June 10, 2010), for example, the court rejected arguments similar to those Plaintiff makes here, taking judicial notice of numerous news articles for the "fact that [the] exhibits contained certain information and not for the truth of the matters asserted therein" because the exhibits were "relevant" to "what information was available to the investing public."[4] In *In re Tommy Hilfiger, Securities Litigation*, 04-cv-7678, 2007 WL 5581705, at *5 (S.D.N.Y. July 20, 2007), the court declined to take judicial notice of certain publications because, in that case, "the fact of their publication alone [was] irrelevant." Here, by contrast, there is no dispute that the publication of rumors of potential allegations against Mr. Moonves is relevant because there is no duty under the federal securities laws to disclose information available to others.[5] (Br. 37; Opp'n (ECF 82) 30).)

Finally, Plaintiff argues that the Court should not take judicial notice of the exhibits because (i) the websites and tweets are not "generally known within this District," and (ii) the rumors contained therein are of questionable "accuracy" and/or insufficiently connected to Mr. Moonves, although Plaintiff concedes that commentators on the websites and tweets did in fact allege that Mr. Moonves was the subject of the reporters' rumored investigation. As to the former contention, there can be no dispute that the websites and tweets were and are accessible to anyone within the District. 1 Federal Evidence § 2:4 (4th ed.) (noting that the "standard does not require that the fact be known by any 'person in the street' whom one might encounter at random, or even by most persons in the street"). As to the latter, Plaintiff's argument rings false because Plaintiff *does not contest* the accuracy of the rumors, nor could it given the allegations of the Amended Complaint. Regardless, because Moving Defendants do not submit the exhibits for their truth, the accuracy of the rumors and the level of certainty of whether they related to Mr. Moonves are irrelevant to whether the Court may take judicial notice that the information *was available to others*. Indeed, based on the exhibits themselves, and given the limited purpose for which they are offered, the Court can "accurately and readily determine[] from sources whose accuracy cannot reasonably be questioned" that the rumors' existence was a public fact. Fed. R. Evid. 201(b)(2). Plaintiff does not and cannot dispute that these websites and tweets were real and available to others.[6]

---

[4] The court declined to take judicial notice of one exhibit containing information allegedly published on UBS's own website, but that was because there was no information concerning "where and when [the] document is or was located on [defendant's] website," such that the court could not determine whether the information was actually available to the public at the relevant time. *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *15. No such ambiguity is present here. The date and time that each tweet or report was published on the Internet is noted on the face of each document, and any user can view the source code confirming that information by right-clicking on the website and selecting "page source" or "view source." (*See* Exs. A–C annexed hereto (containing highlighted excerpts of the publicly-available page source code for Exhibits 16, 17, and 18, respectively).)

[5] Plaintiff's other authorities are equally inapposite. *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1028–29 (C.D. Cal. 2015), is distinguishable because there (unlike here) the plaintiff sought judicial notice of republications on third-party websites (rather than the original or archived posts) and "clearly [sought] to have the court take judicial notice of the truth of the facts stated in the various press releases and news articles." In *City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 288 (S.D.N.Y. 2013), the court did not address whether it could take judicial notice of the fact that information was published, but rather declined to judicially notice the disputed fact "that there were industry-wide increase[s] in costs in the mining industry, and that these cost increases caused numerous mining companies to delay large development projects in or around 2011." Similarly, in *Cowan v. Costco Wholesale Corp.*, 15-cv-05552, 2017 WL 59080, at *2 (E.D.N.Y. Jan. 5, 2017), the court declined the party's request to judicially notice that certain disputed facts were "scientifically true" for the matter asserted.

[6] Plaintiff's attack on the vagueness of the rumors involving Mr. Moonves only underscores that the CBS Board Members who were allegedly alerted to these or similar rumors in January 2018 were not aware of any specific—let alone substantiated—allegations against Mr. Moonves that they were required to disclose. Further, regardless of whether the rumors were public, the federal securities laws do not require disclosure of rumors of journalist inquiries. (Br. 15–18.)

Respectfully submitted,

*s/Mary Eaton*
Mary Eaton

cc: Counsel of Record (via ECF)