UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
GENE SAMIT and JOHN LANTZ,
Individually and on Behalf of All Others
Similarly Situated,

       Plaintiffs,

 vs.

CBS CORPORATION and LESLIE
MOONVES,

       Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:18-cv-07796-VEC
**(Consolidated)**

CLASS ACTION

LEAD PLAINTIFF'S MEMORANDUM OF
LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT,
CERTIFICATION OF THE SETTLEMENT
CLASS, AND APPROVAL OF NOTICE TO
THE SETTLEMENT CLASS

## TABLE OF CONTENTS

Page

I.    HISTORY OF THE LITIGATION .................................................................................3

II.   THE SETTLEMENT TERMS......................................................................................6

III.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
      PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS.................................................8

      A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the
           Settlement Class................................................................................10

      B.   The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
           Negotiations ......................................................................................10

      C.   The Relief Provided by the Settlement Is Adequate When Weighed
           Against the Risks of Litigation ...........................................................11

      D.   The Proposed Method for Distributing Relief Is Effective....................12

      E.   Lead Counsel's Fee and Expense Request Is Fair and Reasonable .......13

      F.   All Settlement Class Members Are Treated Equitably Relative to Each
           Other ................................................................................................14

      G.   The *Grinnell* Factors Are Also Met ....................................................14

           1.   The Complexity, Expense, and Likely Duration of the Litigation
                Supports Approval of the Settlement.........................................14

           2.   The Reaction of the Settlement Class to the Settlement ..............15

           3.   The Stage of the Proceedings....................................................15

           4.   The Risk of Establishing Liability and Damages .......................15

           5.   The Risks of Maintaining the Class Action Through Trial...........15

           6.   The Ability of Defendants to Withstand a Greater Judgment.......16

           7.   The Reasonableness of the Settlement in Light of the Best Possible
                Recovery and the Attendant Risks of Litigation........................16

IV.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
      PURPOSES IS APPROPRIATE .................................................................................17

      A.   The Settlement Class Satisfies the Requirements of Rule 23(a)............18

4868-7550-9786.v1

**Page**

|  | 1. | Numerosity | 18 |
|  | 2. | Commonality | 19 |
|  | 3. | Typicality | 20 |
|  | 4. | Adequate Representation | 20 |
| B. | | Rule 23(b)(3) Is Satisfied | 21 |
|  | 1. | Common Legal and Factual Questions Predominate | 21 |
|  | 2. | A Class Action Is Superior to Other Methods of Adjudication | 22 |
| V. | | NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED | 23 |
| VI. | | PROPOSED SCHEDULE OF SETTLEMENT EVENTS | 24 |
| VII. | | CONCLUSION | 24 |

4868-7550-9786.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................18, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..........................................................................................................22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)............................................................................................19

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
    (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ......................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..............................................................................................18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).................................................................................9, 10, 16

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................9, 14, 15

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................15

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071(HB), 2003 WL 21672085
    (S.D.N.Y. July 16, 2003) ................................................................................................20

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)............................................................................................18

*In re BHP Billiton Ltd. Sec. Litig.*,
    No. 1:16-cv-01445-NRB, 2019 WL 1577313
    (S.D.N.Y. Apr. 10, 2019)................................................................................................14

**Page**

*In re Deutsche Bank AG Sec. Litig.*,
No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980
(S.D.N.Y. June 11, 2020).............................................................................................13

*In re Dynex Cap., Inc. Sec. Litig.*,
No. 05 Civ. 1897(HB), 2011 WL 781215
(S.D.N.Y. Mar. 7, 2011)..............................................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)...........................................................................................20

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................9, 16

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003)............................................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .....................................................................................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546
(S.D.N.Y. Dec. 23, 2009) .......................................................................................20, 21

*In re Prothena Corp. PLC Sec. Litig.*,
No. 1:18-cv-06425-ALC, 2019 WL 6528672
(S.D.N.Y. Dec. 4, 2019)...............................................................................................14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................8, 18

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
(E.D.N.Y. Oct. 23, 2012).............................................................................................16

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 Civ. 11515(WHP), 2008 WL 5110904
(S.D.N.Y. Nov. 20, 2008).............................................................................................23

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972).......................................................................................19

Page

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .............................................................21

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................16

*Pantelyat v. Bank of Am., N.A*,
   No. 16-cv-8964 (AJN), 2019 WL 402854
   (S.D.N.Y. Jan. 31, 2019) ................................................................9, 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................22

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) .............................................19, 20, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................8, 9, 10, 23

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b) ...............................................................................................3, 4
   §78t(a) ...............................................................................................3, 4
   §78u-4(a)(4) ..........................................................................................6

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................23
   Rule 23(a) ................................................................................17-18, 21
   Rule 23(a)(1) .......................................................................................18
   Rule 23(a)(2) .......................................................................................19
   Rule 23(a)(3) .......................................................................................20
   Rule 23(a)(4) .......................................................................................20
   Rule 23(b) ............................................................................................18
   Rule 23(b)(3) ...........................................................17-18, 21-22
   Rule 23(e) ..............................................................................................8
   Rule 23(e)(1) .........................................................................................8
   Rule 23(e)(1)(B) ....................................................................................8
   Rule 23(e)(2) ......................................................................................8, 9
   Rule 23(e)(2)(C)(i) .........................................................................14, 15
   Rule 23(e)(2)(D) ..................................................................................14
   Rule 23(e)(3) .........................................................................................8

**Page**

**SECONDARY AUTHORITIES**

Janeen McIntosh & Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation:*
  *2021 Full-Year Review* ............................................................................................17

4868-7550-9786.v1

Lead Plaintiff Construction Laborers Pension Trust for Southern California ("Lead Plaintiff"), on behalf of itself and all persons similarly situated, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement between Lead Plaintiff, on behalf of itself and the proposed Settlement Class, and defendants CBS Corporation n/k/a Paramount Global ("CBS" or the "Company") and Leslie Moonves (collectively, "Defendants," and together with Lead Plaintiff, the "Parties"); (ii) certification of the proposed Settlement Class for purposes of the Settlement;[1] (iii) approval of the form and manner of the settlement notices to members of the Settlement Class; and (iv) the scheduling of a hearing (the "Final Approval Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.  The Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") is filed herewith.[2]

## PRELIMINARY STATEMENT

Lead Plaintiff and Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Action for $14,750,000 in cash.  This resolution, which falls well within the range of possible approval, involved a thorough investigation, extensive motion practice, consultation with an expert on damages and loss causation, and a formal mediation involving rigorous and extensive negotiations.  The terms of the Settlement are set forth in the Stipulation, filed herewith.

---

[1]   As detailed more fully below, except for various exceptions, the "Settlement Class" consists of all Persons who purchased or otherwise acquired CBS common stock during the period from November 29, 2017 through July 27, 2018, inclusive.

[2]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement ("Stipulation"), filed herewith.  All emphasis is added and all citations are omitted unless otherwise noted.

- 1 -

Lead Plaintiff and Lead Counsel approve of the Settlement.  As demonstrated at the lead plaintiff appointment stage, Lead Plaintiff has a financial interest in this case (ECF Nos. 43, 54), oversaw the litigation and authorized the Settlement.  Lead Counsel has substantial securities litigation experience and is recognized as a leader in the field.  *See* www.rgrdlaw.com.  Based upon Lead Counsel's experience and evaluation of the facts and the applicable law, Lead Counsel – with Lead Plaintiff's endorsement – submits that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class.  This is especially so in light of the risk that the Settlement Class might recover substantially less (or nothing) if the Action was litigated through class certification, summary judgment motions, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years).  Indeed, Lead Plaintiff and the Settlement Class face significant risks with regard to establishing liability and damages, including the risk that Defendants would prevail on the lone surviving alleged misstatement, at summary judgment or trial following lengthy and expensive fact and expert discovery.  Given these and other risks inherent in this complex securities class action, and the Settlement's value relative to potential recoverable damages, the Settlement represents a very good result for the Settlement Class under the circumstances.

At this preliminary approval stage, the Court need only make a recoverable evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement. In light of the recovery obtained, and the risks and expenses posed by protracted litigation against the Defendants, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Settlement Class for purposes of the Settlement; (iii) approve the form and content of the

- 2 -

Notice and Summary Notice attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and Litigation Expenses; submitting papers in support of final approval of the Settlement; and the Final Approval Hearing.

## I.      HISTORY OF THE LITIGATION

The Action is currently pending before the Honorable Valerie Caproni in the United States District Court for the Southern District of New York (the "Court").  The initial complaint in the Action was filed on August 27, 2018.  On November 30, 2018, the Court appointed Lead Plaintiff and Lead Counsel.

Lead Plaintiff's Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), filed on February 11, 2019, alleged that Defendants and Former Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  More specifically, Lead Plaintiff alleged that throughout the putative class period, September 26, 2016 through December 4, 2018, inclusive, Defendants and Former Defendants made numerous materially false and misleading statements and/or omissions regarding the Company's policies and corporate governance, the importance of key personnel, including Moonves, and other statements made to news media, which caused the price of the Company's common stock to trade at artificially inflated

- 3 -

prices, until the market learned of the false and misleading nature of the statements, and the Company's stock price significantly declined.

On April 12, 2019, Defendants and Former Defendants moved to dismiss the Amended Complaint, arguing that it failed to allege a material misstatement or omission, failed to plead facts supporting scienter, and failed to allege loss causation. Lead Plaintiff filed its oppositions to the motions to dismiss on June 11, 2019, and Defendants and Former Defendants filed their reply briefs on July 26, 2019. On July 16, 2019, Lead Plaintiff filed a motion seeking to strike certain of the exhibits attached to one of the motions to dismiss. Defendants and Former Defendants filed an opposition to that motion on July 23, 2019.

On January 15, 2020, the Court granted in part and denied in part Defendants' and Former Defendants' motions to dismiss. The Court held that only one of the alleged misstatements was sufficient to support a claim under §§10(b) and 20(a) of the Exchange Act, and denied Lead Plaintiff's motion to strike as moot. The sole alleged misstatement that the Court found to be adequately alleged was a statement made by Defendant Moonves on November 29, 2017, at an industry conference. As a result of the Court's decision, the putative class period was narrowed to November 29, 2017 to July 27, 2018, inclusive. Furthermore, the Court dismissed Lead Plaintiff's claims against the Former Defendants, holding that the Amended Complaint did not adequately allege that they had the requisite scienter under §10(b). The remaining defendants, Defendants CBS and Moonves, answered the Amended Complaint on March 12, 2020. Defendants expressly denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever, including (as set forth in more detail in Section III of the Stipulation) that they engaged in any conduct that constituted violations of §§10(b) and 20(a) and that Lead Plaintiff has asserted any valid claims as to any of them.

4868-7550-9786.v1

Thereafter, for almost two years, the Parties continued to vigorously litigate the Action.  The Parties briefed and argued whether, as proposed by Defendants, discovery should be bifurcated so that the Parties proceed with class certification discovery before merits discovery, and, on February 21, 2020, the Court ordered the Parties to proceed first with class discovery.  The Parties also briefed and argued certain disputes over the scope of class certification discovery, which the Court resolved on April 20, 2020, and subsequently, on April 30, 2020, so-ordered a schedule setting certain deadlines for class discovery.  The Parties engaged in extensive discovery of class certification issues, including (a) document productions by Lead Plaintiff and Lead Plaintiff's investment managers, (b) responses to written interrogatories by Lead Plaintiff, (c) depositions of Lead Plaintiff and one of Lead Plaintiff's investment managers, and (d) expert discovery, with Lead Plaintiff and Defendants submitting expert reports, and both parties' experts being deposed.

On March 19, 2021, Lead Plaintiff filed its motion for class certification.  Defendants filed their opposition to class certification on May 18, 2021, and a Notice of Supplemental Authority relating to a recent U.S. Supreme Court decision regarding class certification on June 23, 2021.  Lead Plaintiff filed its reply brief on July 2, 2021.  Lead Plaintiff's motion for class certification was pending at the time the Parties reached their agreement-in-principle to settle the Action.

During the course of the Action, the Parties engaged an experienced and neutral third-party mediator and participated in settlement discussions on multiple occasions.  On January 10, 2022, the Parties reached an agreement-in-principle to resolve the Action.  The agreement included, among other things, the Parties' agreement to settle the Action for releases and a cash payment of $14,750,000 for the benefit of the Settlement Class, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court.  The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement between the Parties.

- 5 -

4868-7550-9786.v1

In light of the substantial benefit to the Settlement Class, the significant costs and risks of protracted litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator – Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Settlement Class.  Lead Plaintiff further submits that the Court should, preliminarily and for purposes of the Settlement, certify the Settlement Class, appoint Lead Plaintiff as Class Representative, and appoint Lead Counsel as Class Counsel.

## II.    THE SETTLEMENT TERMS

The Settlement provides that CBS will pay, or cause to be paid, $14.75 million into the Escrow Account, which amount plus accrued interest comprises the Settlement Fund.  Stipulation, ¶4.1.  Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. *Id.*, ¶5.5.  Lead Plaintiff proposes a nationally recognized class action settlement administrator, Gilardi & Co. LLC, to be retained here subject to the Court's approval.

The Notice provides that Lead Counsel will submit an application in support of final approval of the Settlement, for approval of the proposed Plan of Allocation, and for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and Litigation Expenses in an amount not to exceed $500,000, including an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.[3]  The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

---

[3]    Lead Counsel intends to share fees with The Rosen Firm, P.A., counsel for lead plaintiff movant Iron Workers District Council of Philadelphia & Vicinity Benefit & Pension Plans, and Johnson Fistel, LLP, additional counsel for plaintiff John Lantz.  In accordance with the Court's

- 6 -

Once Notice and Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their CBS stock purchases, acquisitions, and sales.  The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions, including this Court.

Lead Plaintiff and Defendants have entered into a Supplemental Agreement that provides that if, prior to the Final Approval Hearing, Settlement Class Members representing a certain amount of CBS common stock purchased or acquired during the Settlement Class Period request exclusion from the Settlement Class, CBS shall have the option to terminate the Settlement.  Stipulation, ¶12.2.

In exchange for the benefits provided under the Stipulation, the Parties will release the "Released Claims," which include: all Released Defendants' Claims and all Released Plaintiff's Claims.  Stipulation, ¶1.34.

The proposed Settlement is a very good recovery on the claims asserted in this Action, and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class.  Therefore, the Court should grant preliminary approval of the Settlement and permit notice to be provided to the Settlement Class.

---

requirements, Exhibit A hereto contains the approximate number of hours and current hourly rates for the attorneys who worked more than 10 hours on this case.

### III.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Rule 23(e) requires judicial approval of a class action settlement. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages. Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

> A.   the class representatives and class counsel have adequately represented the class;
>
> B.   the proposal was negotiated at arm's length;
>
> C.   the relief provided for the class is adequate, taking into account:
>
> > (i)   the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (vi)   any agreement required to be identified under Rule 23(e)(3); and

- 8 -

D.       the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors, known as the *Grinnell*

factors, some of which overlap with Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and] (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Pantelyat v. Bank of Am., N.A*,

No. 16-cv-8964 (AJN), 2019 WL 402854, at *3-*4 (S.D.N.Y. Jan. 31, 2019).  A proposed settlement

is substantively fair if the totality of the nine *Grinnell* factors weigh in favor of that conclusion.  *See*

*Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463); *D'Amato v. Deutsche Bank*, 236 F.3d

78, 86 (2d Cir. 2001).  "In finding that a settlement is fair, not every factor must weigh in favor of

settlement, 'rather the court should consider the totality of these factors in light of the particular

circumstances.'"  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement

approval process and grant preliminary approval of the proposed Settlement.  As stated above, the

proposed Settlement provides a Settlement Amount of $14.750 million in cash, a substantial

recovery that is unquestionably beneficial to the Settlement Class, and plainly "'within the range of

possible approval.'"  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

A.     **Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

As discussed herein, Lead Plaintiff's interests in this case are directly aligned with those of the other Settlement Class Members.  Lead Plaintiff has demonstrated its ability and willingness to pursue the Action on behalf of the Settlement Class through its involvement in the Action and in approving the Settlement.  Lead Plaintiff and its counsel vigorously advocated for the interests of CBS shareholders and have obtained excellent results.  Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; the filing of a detailed amended complaint; extensive motion practice directed to the sufficiency of the complaint and class certification; consultation with an expert on damages and loss causation issues; and participation in extensive, hard-fought settlement negotiations.  The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of CBS shareholders.  Accordingly, this factor weighs in favor of approval.

B.     **The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See Wal-Mart*, 396 F.3d at 116.  As described above, the Settlement was reached only after extensive, arm's-length negotiations before Judge Layn Phillips (Ret.), a nationally recognized mediator experienced in securities class actions.  *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  After back-and-forth negotiations, extending over a substantial period of time, the Parties reached an agreement-in-principle to settle the Action.

- 10 -

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Counsel conducted an extensive investigation prior to drafting and filing the Amended Complaint, which included, among other things, a thorough review of:  (i) CBS's public SEC filings; (ii) presentations, press releases, media, and analyst reports made by or about the Company; (iii) transcripts of CBS's conference calls with analysts and investors; and (iv) publicly available data relating to CBS stock.  In addition, the Parties briefed Defendants' motions to dismiss and motion to stay and Lead Plaintiff's motion for class certification, and conducted and defended depositions in connection with that motion.  Lead Plaintiff also consulted with a damages and loss causation expert.  Lead Plaintiff and Lead Counsel therefore had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses thereto when they agreed to the Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement.

### C.  The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case."  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Pantelyat*, 2019 WL 402854, at *7.

If approved, the Settlement will provide Settlement Class Members with $14,750,000 in cash, less reasonable attorneys' fees, Litigation Expenses, an award to Lead Plaintiff, if approved,

- 11 -

Notice and Administration Costs, Taxes, and Tax Expenses.  The amount obtained for the Settlement Class represents a very good result for the Settlement Class, particularly in light of the potential recoverable damages and the risk that the Court would deny Lead Plaintiff's motion for class certification or grant a motion for summary judgment on the remaining misstatement.

Additionally, although Lead Plaintiff and Lead Counsel believe their case against Defendants is strong, they acknowledge that the Defendants have put forth substantial arguments concerning liability.  Specifically, Defendants have maintained that Lead Plaintiff cannot establish: falsity, because CBS had no duty to disclose rumors regarding Mr. Moonves' conduct; scienter, because even if the alleged misstatement was false, the allegations of motive and recklessness were insufficient; and loss causation, because neither the July 27, 2018 *New Yorker* article nor the reports about the article on July 27 or other media reports between July 27-29 qualifies as a corrective disclosure.  *See* ECF Nos. 78-79, 91, 93.  Defendants have also argued that Lead Plaintiff would be unable to establish class-wide damages for the asserted Settlement Class Period.  If any of these arguments were accepted in whole or in part, either at the summary judgment stage or at trial, any potential recovery could be eliminated or dramatically reduced.  And even if Lead Plaintiff prevailed at each of those stages, it would also have to prevail on the appeals that would likely follow.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Settlement Class.

### D.    The Proposed Method for Distributing Relief Is Effective

The methods of the proposed notice and claims administration process are effective.  Specifically, this includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.  The notice plan

includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  Also, a settlement-specific website will be created where Settlement Class Members can find answers to frequently asked questions, and key documents will be posted, including the Stipulation, Notice, Proof of Claim Form, Preliminary Approval Order, and all briefs and declarations submitted in support of the Settlement and the requested fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Counsel's in-house damages consultant and estimates the amount of alleged artificial inflation in the price of CBS common stock during the Settlement Class Period.

Finally, Gilardi & Co. LLC, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review denial of their claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.  Stipulation, ¶¶8.4-8.12.

### E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees of up to 25% of the Settlement Amount, plus Litigation Expenses in an amount not to exceed $500,000 incurred in connection with the prosecution and resolution of this Action, plus interest on both amounts.  This request is reasonable and in line with other recent fee awards in New York federal courts.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, No. 1:09-cv-01714-GHW-RWL, 2020 WL

- 13 -

3162980, at *1 (S.D.N.Y. June 11, 2020) (awarded one-third of $18.5 million recovery, plus expenses); *In re Prothena Corp. PLC Sec. Litig.*, No. 1:18-cv-06425-ALC, 2019 WL 6528672, at *1 (S.D.N.Y. Dec. 4, 2019) (awarded 30% of $15.75 million recovery, plus expenses); *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarded fees of 30% of $50 million recovery, plus expenses).[4]

## F.    All Settlement Class Members Are Treated Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially.  The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation depending upon whether they have a Recognized Loss.  Lead Plaintiff, just like all other Settlement Class Members, will be subject to the same formula for distribution of the Net Settlement Fund.

## G.    The *Grinnell* Factors Are Also Met

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above.  Fed. R. Civ. P. 23(e)(2)(C)(i).  In addition, this case is a testament to the complexity and expense of securities class actions.  Lead Plaintiff advanced numerous complex legal and factual issues under the federal securities laws.  How

---

[4]    A motion for final approval of the Settlement and for attorneys' fees and expenses will be filed 35 days before the Final Approval Hearing, and Lead Counsel will request that any fees awarded be paid when the Court executes the Judgment and an order awarding such fees and expenses. *See* Stipulation, ¶7.2.

4868-7550-9786.v1

the Court would rule on the pending motion for class certification or on a motion for summary judgment or the jury would find at trial was uncertain; this Settlement eliminates the risks of adverse decisions.

### 2.     The Reaction of the Settlement Class to the Settlement

Lead Plaintiff has participated throughout the prosecution of the case and was actively involved in the decision to enter into the Settlement.  This factor is otherwise inapplicable at this stage, as notice regarding the Settlement has not yet been mailed or otherwise distributed.

### 3.     The Stage of the Proceedings

Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed herein.  The resultant accumulation of information permitted Lead Plaintiff and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.

### 4.     The Risk of Establishing Liability and Damages

The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i).  *See* Fed. R. Civ. P. 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons explained above with respect to why Lead Plaintiff has satisfied the Rule 23(e)(2)(C)(i) factor, Lead Plaintiff has satisfied the fourth *Grinnell* factor.

### 5.     The Risks of Maintaining the Class Action Through Trial

Defendants vigorously opposed Lead Plaintiff's class certification motion, but the Court has not yet ruled on the motion.  Nevertheless, even if the Court grants the motion, it may revisit certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D.

174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  Regardless of whether Defendants here could withstand a judgment in excess of $14.75 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and, in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

The Settlement here represents a very good result under the circumstances – between 7%-9% of reasonably recoverable damages as estimated by the proposed Plan of Allocation.  Lead Plaintiff's percentage recovery is even higher under Defendants' view of damages, which would limit any potential recovery to losses incurred on July 27, 2018 only.  This is a very good result, especially when compared to the median percentage recovery in securities class actions in 2021 of 1.8%.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at 24, Figure 22 (NERA January 25, 2022) (the median ratio of settlement to investor losses in 2021 was 1.8%, and averaged 1.8% in years 2012-2021) (attached hereto as Exhibit B).

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Lead Plaintiff requests that the Court certify the proposed Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Parties have stipulated to certification of the following proposed Settlement Class:

> "Settlement Class" means all Persons who purchased or otherwise acquired CBS common stock during the [period from November 29, 2017 through July 27, 2018, inclusive].  Excluded from the Settlement Class are: (a) Defendants; (b) Former Defendants; (c) any person who served as an officer or director of CBS during the Settlement Class Period; (d) the Immediate Family Members of Moonves, the Former Defendants, and the excluded officers and directors; (e) any firm, trust, corporation, or other entity in which any excluded person or entity has, or had during the Settlement Class Period, a controlling interest; (f) the legal representatives, parents, subsidiaries, agents, affiliates, heirs, successors-in-interest, predecessors, or assigns of any such excluded person or entity, in their capacities as such; and (g) any Person who would otherwise be a Settlement Class Member but who validly and timely requests exclusion in accordance with the requirements set by the Court. Notwithstanding the foregoing, any CBS employee retirement, savings, or benefit plan shall not be deemed an affiliate of any Defendant or Former Defendant, except that any Claim submitted on behalf of any CBS employee retirement, savings, or benefit plan shall be pro-rated to exclude the proportion owned by Defendants or Former Defendants and other specifically excluded persons or entities.

Stipulation, ¶1.40.

- 17 -

The Parties further stipulate to certification of Lead Plaintiff as Class Representative for the Settlement Class, and appointment of Robbins Geller Rudman & Dowd LLP as Class Counsel for the Settlement Class.

Certification of a class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205.  A class must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").  The proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Final Approval Hearing.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.    Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Dynex Cap., Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011).

During the Settlement Class Period, CBS had hundreds of millions of shares of common stock outstanding, which traded on the New York Stock Exchange.  While the exact number of

Settlement Class Members is unknown to Lead Plaintiff, Lead Plaintiff estimates that there are thousands of investors residing in a geographically disbursed area, rendering joinder impracticable.

### 2.   Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations . . . relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

Here, the record reflects the existence of numerous common questions, including the following:  (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts concerning Defendants' knowledge of and exposure to #MeToo liability; (3) whether Defendants acted with scienter; (4) whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; (5) whether the price of CBS's common stock was artificially inflated; and (6) the extent of damages sustained by the Settlement Class, and the appropriate measure of those damages.

These and other common questions are sufficient to establish Rule 23(a)(2) "commonality." *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

### 3.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "'Typical' does not mean 'identical.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

As with commonality, typicality is plainly satisfied here. Like the other Settlement Class Members, Lead Plaintiff alleges that it purchased CBS common stock at artificially inflated prices due to Defendants' allegedly material misstatements and omissions and was damaged when the truth emerged. Thus, the claims of Lead Plaintiff and the Settlement Class rely on the same facts and legal theories to establish liability. Accordingly, the typicality requirement is met. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 107.

### 4.    Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Flag Telecom*, 574 F.3d at 35.

Here, Lead Plaintiff's interests do not conflict with those of the Settlement Class. Rather, given that the Settlement Class was injured by the same allegedly materially false and misleading statements as Lead Plaintiff, Lead Plaintiff's interests are directly aligned with the interests of the Settlement Class. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*,

No. 01 Civ. 10071(HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003)).  Lead Plaintiff has otherwise already demonstrated its commitment to prosecuting this Action on behalf of the Settlement Class.  Lead Plaintiff also retained counsel who are qualified, experienced, and able to adequately conduct the Action.  Lead Counsel has demonstrated that it is qualified and capable of prosecuting this Action, having prosecuted many securities class actions (including within this District) for many years with a proven track record of success.  *See* www.rgrdlaw.com.

Accordingly, the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this Action.

### B.      Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal and Factual Questions Predominate

Common issues predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.  *See Marsh & McLennan*, 2009 WL 5178546, at *11.  As the U.S. Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.  Common issues also predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, because Settlement Class Members are subject to the same misrepresentations and omissions, and because it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate.  Lead Plaintiff's claims and the claims of the Settlement Class are also susceptible to common evidence and proof, because if Lead Plaintiff and each Settlement Class Member brought individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-69 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114.  Rule 23(b)(3)'s predominance requirement is therefore satisfied.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

The class action device is the superior method for resolving the claims in this Action.  Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (stating that "most of the plaintiffs would have no realistic day in court if a class action were not available").

This class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors at issue here.  *See Merrill Lynch*, 277 F.R.D. at 120.  This is especially true in light of the fact that, without the class action device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation.  Moreover, certification of the Settlement Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

## V.      NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of the proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Settlement Class Members by mailing the Notice and Proof of Claim Form to all Settlement Class Members who can be identified with reasonable effort, using multiple sources of data, including: (i) a list provided by CBS identifying the purchasers of CBS common stock during the Settlement Class Period; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities.  The Notice will advise the Settlement Class of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses, including an award to Lead Plaintiff.  The Notice also will provide specifics on the date, time, and place of the Final Approval Hearing and set forth the procedures for submitting valid and timely Proof of Claim Forms pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.

In addition to mailing the Notice and Proof of Claim Form, the Claims Administrator will cause publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114; *see also In re*

- 23 -

*Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim Form to the Settlement Class (which date shall be the "Notice Date") (Preliminary Approval Order, ¶9(b)) | 30 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order, ¶9(c)) | Up to 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order, ¶20) | 35 calendar days prior to Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶¶14, 16) | 21 calendar days prior to Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order, ¶6) | 120 calendar days after the Notice Date |
| Deadline for filing reply papers (Preliminary Approval Order, ¶20) | 7 calendar days prior to Final Approval Hearing |
| Deadline for submitting Proof of Claim Forms (Preliminary Approval Order, ¶12) | 120 calendar days after the Notice Date |

## VII.    CONCLUSION

Accordingly, Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Settlement Class for purposes of the Settlement; (iii) approve the proposed form and manner of notice to be given to the Settlement Class; and (iv) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and expenses. The Parties' agreed-upon form of the proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

4868-7550-9786.v1

DATED:  April 15, 2022                    Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          VINCENT M. SERRA


                                                  s/ Vincent M. Serra
                                          _____
                                              VINCENT M. SERRA

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          vserra@rgrdlaw.com

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SPENCER A. BURKHOLZ
                                          ELLEN GUSIKOFF STEWART
                                          JONAH H. GOLDSTEIN
                                          LAURIE L. LARGENT
                                          LAURA ANDRACCHIO
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101-8498
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)
                                          spenceb@rgrdlaw.com
                                          elleng@rgrdlaw.com
                                          jonahg@rgrdlaw.com
                                          llargent@rgrdlaw.com
                                          landracchio@rgrdlaw.com

                                          Lead Counsel for Lead Plaintiff

- 25 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 15, 2022, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Vincent M. Serra
VINCENT M. SERRA

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  vserra@rgrdlaw.com

## Mailing Information for a Case 1:18-cv-07796-VEC Samit v. CBS Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laura Andracchio**
  LAndracchio@rgrdlaw.com

- **Mary Katherine Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W. Brown**
  dbrown@paulweiss.com,Mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,scaesar@rgrdlaw.com

- **Steven M. Cady**
  scady@wc.com

- **Alexander Leonard Cheney**
  acheney@willkie.com,maosdny@willkie.com

- **Todd G. Cosenza**
  tcosenza@willkie.com,maosdny@willkie.com

- **Scott A Edelman**
  sedelman@gibsondunn.com

- **Zeh Sheena Ekono**
  maosdny@willkie.com,zekono@willkie.com

- **Brad D. Feldman**
  bfeldman@paulweiss.com,mao_fednational@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Francis Hans , Jr**
  Richard.Hans@dlapiper.com,ivy.hamlin@dlapiper.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com,richard-hans-7005@ecf.pacerpro.com

- **Brendan Michael Herrmann**
  brendan.herrmann@dechert.com,nycmanagingclerks@dechert.com,AutoDocket@dechert.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,bmcginty@paulweiss.com,mao_fednational@paulweiss.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Andrew J. Levander**
  andrew.levander@dechert.com,christopher.ruhland@dechert.com,nycmanagingclerks@dechert.com,AutoDocket@dechert.com,9833472420@filings.docketbird.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Angela Liu**
  angela.liu@dechert.com

- **Jessica Ann Masella**
  Jessica.Masella@dlapiper.com,jessica-masella-8419@ecf.pacerpro.com

- **Margaret Mortimer**
  margaret.mortimer@dechert.com

- **Rahul Mukhi**
  rmukhi@cgsh.com,maofiling@cgsh.com

- **Tariq Mundiya**
  maosdny@willkie.com,tmundiya@willkie.com

- **Sharon L. Nelles**
  NELLESS@SULLCROM.COM,s&cmanagingclerk@sullcrom.com,sharon-nelles-8045@ecf.pacerpro.com

- **Beth Deborah Newton**
  newtonb@sullcrom.com,s&cmanagingclerk@sullcrom.com,beth-newton-9897@ecf.pacerpro.com

- **Jonathan Bradley Pitt**
  jpitt@wc.com

- **Andrew R. Podolin**
  APodolin@perkinscoie.com,RKOManagingClerk@rkollp.com

- **Matthew McPherson Balf Riccardi**
  MRiccardi@perkinscoie.com,MAplogan@perkinscoie.com,michellerose@perkinscoie.com,docketnyc@perkinscoie.com,nvargas@perkinscoie.com

- **Lee S Richards , III**
  LeeRichards@perkinscoie.com,michellerose@perkinscoie.com,nvargas@perkinscoie.com

- **Katharine Rodgers**
  rodgersk@sullcrom.com,katherine-rodgers-0146@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Vincent Michael Serra**
  vserra@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Brendan V.. Sullivan , Jr**
  bsullivan@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
John Lantz
,
```