UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
GENE SAMIT and JOHN LANTZ,
Individually and on Behalf of All Others
Similarly Situated,

                             Plaintiffs,

      vs.

CBS CORPORATION and LESLIE
MOONVES,

                         Defendants.

—————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:18-cv-07796-VEC
**(Consolidated)**

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN
OF ALLOCATION

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

III.    STANDARDS FOR FINAL APPROVAL OF SETTLEMENT CLASS ACTION
        SETTLEMENTS.................................................................................................3

        A.     The Law Favors and Encourages Settlements ...........................................3

        B.     The Settlement Must Be Procedurally and Substantively Fair, Adequate,
               and Reasonable .........................................................................................4

        C.     The Proposed Settlement Is Procedurally and Substantively Fair,
               Adequate, and Reasonable .........................................................................6

               1.     The Settlement Satisfies the Requirements of Rule 23(e)(2)......................6

               2.     The Settlement Satisfies the Remaining *Grinnell* Factors........................15

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ........................................19

V.      THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS
        FOR PURPOSES OF EFFECTUATING THE SETTLEMENT......................................21

VI.     NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
        OF RULE 23 AND DUE PROCESS................................................................21

VII.    CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................................................................17

*Charron v. Pinnacle Grp. NY LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012),
   *aff'd sub nom. Charron v. Wiener*,
   731 F.3d 241 (2d. Cir. 2013)....................................................................................................8

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................ *passim*

*City of Austin Police Ret. Sys. v. Kinross Gold Corp., et al.*,
   No. 1:12-cv-01203-VEC, ECF 206 (S.D.N.Y. Oct. 19, 2015) ................................................21

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) .......................................................................................15, 18

*Constr. Laborers Pension Tr. v. CBS Corp.*,
   433 F. Supp. 3d 515 (S.D.N.Y. 2020)......................................................................................2

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).......................................................................................................6

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)....................................................................................................5, 7

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................................ *passim*

*Dornberger v. Metro. Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................................24

*Hicks v. Morgan Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................3, 8, 11, 19

**Page**

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) .......................................................................18

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..............................................................9

*In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................7, 16, 18

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................................................6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd*, 822 F. App'x 40 (2d Cir. 2020)............................................................ *passim*

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........................................................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................. *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................16

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................11, 19

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................22

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)......................................................................5

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y July 21, 2020) ................................................. *passim*

*In re Sony SXRD Rear Projection Television Settlement Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................................................18

**Page**

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................................................................15

*Martignago v. Merrill Lynch & Co., Inc.*,
    2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013) ........................................................................16

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................................................3, 7, 8, 17

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..................................................................................................18

*Padro v. Astrue*,
    2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ........................................................................24

*Patel v. L-3 Commc'ns Holdings, Inc., et al.*,
    No. 1:14-cv-06038-VEC, ECF 163-8 (S.D.N.Y. Aug. 16, 2017) ..........................................21

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) .........................................................................................13

*Ret. Sys. v. Wyeth*,
    2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) .........................................................................20

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ..........................................................................6

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................................12

*Sullivan v. DB Indus., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..................................................................................................20

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................................................5

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) .............................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................................................*passim*

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .....................................................................5, 15

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ........................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 .........................................................................................................22
    Rule 23(a) ................................................................................................21, 22
    Rule23(b)(3) ............................................................................................21, 22
    Rule 23(c) .....................................................................................................17
    Rule 23(c)(2)(B) ......................................................................................22, 24
    Rule 23(e) .................................................................................................*passim*
    Rule (e)(1)(B) ...............................................................................................22
    Rule 23(e)(2) ............................................................................................*passim*
    Rule 23(e)(2)(A) .............................................................................................7
    Rule 23(e)(2)(B) .............................................................................................7
    Rule 23(e)(2)(C)(i) ......................................................................................8, 12
    Rule 23(e)(2)(C)(ii) .......................................................................................12
    Rule 23(e)(2)(C)(iii) ......................................................................................13
    Rule 23(e)(2)(C)(iv) ......................................................................................14
    Rule 23(e)(2)(D) ...........................................................................................14
    Rule 23(e)(3) .............................................................................................4, 14
    Rule 23(f) .....................................................................................................17

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, *Securities Settlement Class Action Settlements:*
    *2021 Review and Analysis* (Cornerstone Research 2022) ........................................19

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Construction Laborers Pension Trust for Southern California, on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its motion for final approval of the $14,750,000 Settlement (the "Settlement Amount") reached in this action (the "Action") and approval of the Plan of Allocation of Settlement proceeds (the "Plan").  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated April 15, 2022 (the "Stipulation").  ECF 177.[1]

## I.   INTRODUCTION

Lead Plaintiff's $14.75 million recovery is the result of its rigorous nearly four-year effort to prosecute this highly contested litigation, reached following lengthy arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally renowned mediator.  The Settlement represents a very good result for the Settlement Class under the circumstances and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Settlement Class in light of the substantial litigation risks Lead Plaintiff faced.  The gravamen of Lead Plaintiff's claims was that, during the Settlement Class Period, Defendants made materially false and misleading statements and/or omitted material information regarding the Company's policies and corporate governance, the importance of key personnel, including Defendant Leslie Moonves, and other statements made to news media, which caused the price of CBS's stock to trade at artificially inflated prices, until the market learned

---

[1]   All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of Spencer A. Burkholz in Support of:  (1) Lead Plaintiff's Motion for Final Approval of Settlement Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Burkholz Decl."), submitted herewith.  Citations are omitted and emphasis is added throughout unless otherwise noted.

the false and misleading nature of the statements, and the stock price significantly declined.  While Lead Plaintiff believes in the merit of its claims, Defendants had strong arguments that Lead Plaintiff could not establish that the remaining alleged misstatement was materially false or misleading or made with scienter.[2]  Defendants also firmly argued that Lead Plaintiff could not establish loss causation because the July 27, 2018 article in *The New Yorker* did not qualify as a "corrective disclosure." Burkholz Decl., ¶21.  And that to the extent the Settlement Class suffered any damages (which Defendants vehemently denied), Defendants argued that they were far lower than the amount calculated by Lead Plaintiff's expert.  Moreover, Defendants raised challenges to class certification that may have led to denial of the pending motion, and complete dismissal of the case.  Burkholz Decl., ¶¶47-48.

Given the stage of the litigation, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted a significant factual investigation into the merits of the claims, engaged in briefing in connection with Defendants' motions to dismiss, conducted extensive class certification discovery, including document review and depositions and expert consultation, fully briefed Lead Plaintiff's class certification motion, and participated in formal mediation discussions.  Lead Plaintiff and Lead Counsel also knew that despite their belief in the merits of the claims, there existed the possibility of little or no recovery at all.  Moreover, a skilled and highly reputable securities litigation mediator – the Hon. Layn R. Phillips (Ret.) – assisted the parties in reaching a resolution of the case for $14.75 million.

---

[2]   In its order on Defendants' motions to dismiss, the Court held that none of Defendants' statements regarding CBS's business conduct, CBS's ethics code, key personnel, the #MeToo movement, and CBS's efforts to address workplace sexual misconduct in the wake of Charlie Rose's departure from the network were materially false or misleading.  *Constr. Laborers Pension Tr. v. CBS Corp.*, 433 F. Supp. 3d 515 (S.D.N.Y. 2020).

Given the risks to proceeding and the recovery obtained, Lead Plaintiff respectfully submits that the $14.75 million Settlement and the Plan – which was prepared with the assistance of Lead Counsel's in-house damages expert, and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Burkholz Decl. for a detailed discussion of the factual background and procedural history of the Action, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Action, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.    STANDARDS FOR FINAL APPROVAL OF SETTLEMENT CLASS ACTION SETTLEMENTS

### A.     The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits."  *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").  Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *Grinnell*, 495 F.2d at 462.

- 3 -

As set forth below, the $14.75 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement.  Accordingly, the Settlement warrants final approval from this Court.

 **B.**  **The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Rule 23(e)(2) provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

 (A) the class representatives and class counsel have adequately represented the class;

 (B) the proposal was negotiated at arm's length;

 (C) the relief provided for the class is adequate, taking into account:

  (i) the costs, risks, and delay of trial and appeal;

  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining

the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* [F]actors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 310-11 (S.D.N.Y. 2020).

For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate, not every factor need be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "'[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

Under Rule 23(e)(2), courts "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. As set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement Class Action Settlement, Certification of the Settlement Class, and Approval of Notice to

the Class (ECF 176), and acknowledged by this Court's Opinion & Order (ECF 188), Lead Plaintiff meets all of the requirements imposed by Rule 23(e)(2).  Courts have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

## C.   The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

### 1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### a.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).  Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Settlement Class.  "Lead Plaintiff has claims that are typical of and coextensive with those of other Class Members and had no interests antagonistic to those other Class Members.  Lead Plaintiff has an interest in obtaining the largest possible recovery from Defendants."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y July 21, 2020).  Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class by zealously prosecuting this action, including by, among other things, conducting an extensive investigation of the relevant factual events, drafting a

highly detailed amended complaint, opposing Defendants' motions to dismiss, engaging in class certification briefing, conducting class certification discovery, and preparing for and participating in a mediation session before Judge Phillips, followed by lengthy settlement negotiations.  *See generally* Burkholz Decl.  Through each step of the Action, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Settlement Class.  Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

> **b.    The Proposed Settlement Was Negotiated By Experienced Counsel at Arm's-Length Before an Experienced Mediator**

Lead Plaintiff satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Burkholz Decl., ¶¶38-41.  Notably, the case did not settle following the mediation session.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at *4 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"). Moreover, the Settlement negotiations in this case were "carried out under the direction of Lead Plaintiff[], . . . whose involvement suggests procedural fairness." *Facebook*, 343 F. Supp. 3d at 409.

"A settlement reached 'under the supervision and with the endorsement of a sophisticated institutional investor . . . is "entitled to an even greater presumption of reasonableness.""" *Signet*, 2020 WL 4196468, at *4.

It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate, and not a product of collusion" where it was reached after "arm's-length negotiations between the parties"). Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### c. The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation. As set forth below, these factors weigh in favor of final approval.

#### (1)   The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459. As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval. Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, . . . "have long recognized that such litigation is notably difficult and

notoriously uncertain."'" *Signet*, 2020 WL 4196468, at *4; *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Lead Plaintiff and Lead Counsel firmly believe that the claims asserted in the Action are meritorious, and that they would prevail at trial, further litigation against the remaining Defendants posed risks that made any recovery uncertain.

As set forth above and in the Burkholz Decl., at the time of the Settlement, the parties had completed class certification discovery and briefing, with Lead Plaintiff's class certification motion awaiting a ruling when this Settlement was reached. Had the motion been granted, full scale merits and expert discovery was on the horizon. Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing.[3] Specifically, Defendants have argued that Lead Plaintiff failed to allege that Moonves' November 29, 2017 *Variety* Statement was actionable, because it was too general and did not contain any promise or certainty about his knowledge of his past misconduct or that such conduct would likely become public. *Id.*, ¶50. Defendants also argued that there was no allegation that Moonves' statements were false at the time they were made or that Moonves did not hold the opinions he expressed. *Id.* In support, Defendants emphasized the fact that the allegations of misconduct took place more than ten years before the *Variety* Statement was published. *Id.* In light of the difficulty of pleading falsity, materiality, scienter, and loss causation in securities fraud class actions under the high bar of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Lead Plaintiff knew it faced a substantial risk that the Court would grant Defendants' likely motion for summary judgment on the

---

[3]   In fact, the Court granted Defendants' motions to dismiss except with respect to one statement by Defendant Moonves. Burkholz Decl., ¶26.

sole remaining alleged misstatement, leaving Lead Plaintiff and the Settlement Class with no recovery at all.[4]

### (2)    The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing loss causation and damages.  Here, Defendants argued that Lead Plaintiff had not adequately alleged (and could not prove) loss causation with respect to the remaining alleged misrepresentation:  the *Variety* Statement.  Burkholz Decl., ¶52.  Defendants maintained that there was no causal link between the alleged misstatement and the decline in CBS's share price because:  (1) the market was already aware of potential sexual misconduct allegations against Mr. Moonves as early as January 2018; and (2) the corrective disclosures did not reveal to the market the falsity of the *Variety* Statement because that statement could not reasonably be read to make any representations about Moonves' conduct. *Id.*

Defendants also argue that even if the lack of causation did not ***eliminate*** damages, various circumstances severely limited them.  *Id.*, ¶53.  Defendants asserted that any damages calculations must be limited to a decline on a single trading day, which they would argue is more than a sufficient time period for the market to absorb information about *The New Yorker* article, and nothing disclosed when the article was published after the market closed provided any new information that itself would constitute an additional, separate corrective disclosure.  *Id.*  Had litigation continued, Lead Plaintiff would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and *Daubert* challenges.  As courts have

---

[4]    The Court indicated to the parties at a status conference following its order on the motions to dismiss that Lead Plaintiff "barely survived the motion to dismiss" and that it had "a big note of skepticism that [Lead Plaintiff would] be able to prove" the case.  Hr'g. Tr. at 12:17-20 (Feb. 21, 2020).

long recognized, the substantial uncertainty as to which side's experts' views might be credited by a jury presents a serious litigation risk. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "'battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found'"). If the Court determined that one or more of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's case would become much more difficult to prove.

Thus, in light of the very significant risks Lead Plaintiff faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

### (3)      The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Action would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). Indeed, if not for the Settlement, the Action, which has already been pending for almost four years, would have continued through the completion of fact and expert discovery. The subsequent motion for summary judgment, as well as the preparation for what would likely be a multi-week trial, would have caused the action to persist for several more years before the class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks

. . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* factors, all weigh in favor of final approval.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement.  Pursuant to the Preliminary Approval Order, over 162,000 copies of the Notice and Proof of Claim Form were mailed to potential Settlement Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11-12, submitted herewith.  Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim Form, and Preliminary Approval Order.  *Id.*, ¶14.  Settlement Class Members have until September 19, 2022 to object to the Settlement and to request exclusion from the Settlement Class. While the objection and exclusion date has not yet passed, there are no objections to the adequacy of the Settlement, and only two requests for exclusion from the Settlement Class.  *Id.*, ¶16.[5]

Settlement Class Members have until September 19, 2022 to submit claim forms.  The claims process is similar to that typically used in securities class action settlements.  *See Christine Asia,*

---

[5]    As addressed below, one objection that challenges the $10 minimum distribution threshold was received.

2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective"). *Signet*, 2020 WL 4196468, at *12. This factor therefore supports final approval.

### e.   Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as discussed in Lead Counsel's accompanying fee memorandum, counsel for Lead Plaintiff seeks an award of attorneys' fees in the amount of 25% of the Settlement Amount, and expenses in the amount of $355,355.92, in addition to interest on both amounts, to be paid at the time of award.[6]

As set forth in Lead Counsel's fee memorandum, this request is in line with recent fee awards in this District in similar common-fund cases.

Lead Counsel's fee request is reasonable, and Lead Plaintiff has ensured that the Settlement Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments. Accordingly, this factor supports final approval of the Settlement.

### f.   The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval of the Settlement (ECF 186 at 7), the parties have entered into a supplemental agreement providing that, in the event that requests for exclusion from the Settlement Class exceed a

---

[6]   The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an Order awarding such fees and expenses. *See* Stipulation, ¶6.2; *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (finding the "quick-pay provision" did "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

certain agreed-upon threshold, CBS has the option to terminate the Settlement. As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at \*15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").[7]

> g. **The Settlement Ensures Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D), the final factor, considers whether Settlement Class members are treated equitably. As discussed further below in §IV, Lead Counsel developed the Plan of Allocation in consultation with its in-house damages expert to treat Settlement Class Members equitably relative to each other by: (i) taking into account the timing of their CBS purchases, acquisitions, and sales; and (ii) providing that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses. Lead Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Settlement Class Member. This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

---

[7]    Pursuant to the Court's order, a redacted version of the Supplemental Agreement was filed on May 13, 2022. ECF 187.

2.      **The Settlement Satisfies the Remaining *Grinnell* Factors**

a.      **The Lack of Objections Supports Final Approval**

The reaction of the Settlement Class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'" *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). "'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Wal-Mart Stores*, 396 F.3d at 118.

The deadline to submit objections is September 19, 2022; to date none have been filed to the adequacy of the Settlement.  Only two requests for exclusion been received.  Murray Decl., ¶16. This positive reaction of the Settlement Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the settlement class "demonstrates that the Settlement Class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

b.      **Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement**

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *Bear Stearns*, 909 F. Supp. 2d at 267; *Martignago v. Merrill Lynch & Co., Inc.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before

negotiating.'").  "To satisfy this factor, parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Unquestionably, Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement.  As detailed in the Burkholz Decl., Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation, opposing Defendants' motions to dismiss, conducting class certification discovery and briefing, and consulting with experts.  Lead Plaintiff also participated in hard-fought settlement discussions with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement.  During the mediation, Defendants' Counsel pressed the arguments raised in their motions to dismiss, in addition to further arguments they intended to make if the case were to progress.  This case did not settle for more than two years after the mediation, as litigation proceeded.

Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case.  This factor weighs in favor of final approval.

### c.    Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Lead Plaintiff's class certification motion was fully briefed and awaiting decision when the Settlement was reached.  Defendants vigorously opposed the motion, arguing that Lead Plaintiff did not satisfy the typicality requirement, arguing it had unique defenses as a "net seller" under its damages theory because it benefitted from the alleged fraud.  Burkholz Decl., ¶47.  Defendants also raised a potential "disabling conflict of interest" with respect to the Lead Plaintiff, depending on how

the Court ruled with respect to "disclosure dates." *Id.*, ¶48. Had the Court adopted Defendants'
arguments, the class would not be certified, and the case would be over. Even if the Court granted
Lead Plaintiff's motion, Defendants could still have pressed a Rule 23(f) petition or moved to
decertify the class or trim the class period before trial or on appeal, as class certification may be
reviewed at any stage of the litigation. *See Christine Asia*, 2019 WL 5257534, at *13 (stating that
this risk weighed in favor of final approval because "a class certification order may be altered or
amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to
decertify a class at any time).[8] "The risk of maintaining class status throughout trial . . . weighs in
favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

### d.     Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval. Even if Defendants could
have withstood a greater judgment, a "'defendant's ability to withstand a greater judgment, standing
alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9
(courts "generally do not find the ability of a defendant to withstand a greater judgment to be an
impediment to settlement when the other factors favor the settlement"). A "defendant is not required
to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection
Television Settlement Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here,
though CBS is unquestionably able to endure a larger judgment, all other factors favor final
approval.

---

[8]     The Court has already shortened the class period by virtue of its ruling on the motions to dismiss.

e.      **The Settlement Amount Is Reasonable in View of the**
**Best Possible Recovery and the Risks of Litigation**

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause [Lead Plaintiff] face[s] serious challenges to establishing liability, consideration of [Lead Plaintiff's] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery").  The Settlement represents a recovery of approximately 7%-9% of reasonably recoverable damages for the portion of the case not dismissed (Burkholz Decl., ¶6), an amount that exceeds median recoveries in cases of this size.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Settlement Class Action Settlements: 2021 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2022) (attached hereto as Ex. A).[9]

Moreover, the $14.75 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom

---

[9]   Not surprisingly, Defendants contended that damages were zero due to the absence of any liability and loss causation.

concluded the Settlement represented a very good recovery for the Settlement Class in light of the substantial litigation risks Lead Plaintiff faced.  *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real").  This factor weighs in favor of final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "fair, reasonable, and adequate."  *Signet*, 2020 WL 4196468, at *13.  "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.  A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable.  *IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as set forth in the Notice, the Plan was prepared with the assistance of Lead Counsel's in-house damages expert and has a rational basis, as it is based on the same methodology underlying Lead Plaintiff's measure of damages: the amount of artificial inflation in the price of CBS common stock during the Settlement Class Period.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proof of Claim Forms that are approved for payment from the Net Settlement Fund under the

Plan.  The Plan treats all Settlement Class Members equitably, as everyone who submits a valid and

timely Proof of Claim Form, and does not otherwise exclude himself, herself, or itself from the

Settlement Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the

Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as

such Authorized Claimant's payment amount is $10.00 or more.  *See id.*; *see also* Murray Decl., Ex.

A (Notice) at 11.

One objection was filed to the $10 minimum distribution threshold, and therefore to the Plan

of Allocation.  *See* Objection of Wendy Fellows.  Many courts have concluded that "'*de minimis*

thresholds for payable claims are beneficial to the class as a whole since they save the settlement

fund from being depleted by the administrative costs associated with claims unlikely to exceed those

costs and courts have frequently approved such thresholds, often at $10."  *Sullivan v. DB Indus.,*

*Inc.*, 667 F.3d 273, 328 (3d Cir. 2011); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 2013 WL

4399015, at *2-*3 (S.D.N.Y. Aug. 7, 2013) (approving $10 minimum threshold and collecting

cases);[10] *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 463 (approving $10 minimum

threshold, holding "at some point, the need to avoid excessive expense to the class as a whole

outweigh[ed] the minimal loss to the claimants who are not receiving their *de minimis* amounts of

relief").

Lead Plaintiff and Lead Counsel believe that the Plan is fair and reasonable, and that the $10

distribution threshold is appropriate to minimize administration costs.  Therefore, it is respectfully

submitted that the Court should approve the proposed Plan and overrule Ms. Fellows' objection.

---

[10]  This Court has approved plans of allocation which contain the $10 minimum threshold.  *Patel v.*
*L-3 Commc'ns Holdings, Inc., et al.*, No. 1:14-cv-06038-VEC, ECF 163-8 (Order); ECF 160-1 at 12
(Notice) (S.D.N.Y Aug. 16. 2017); *City of Austin Police Ret. Sys. v. Kinross Gold Corp., et al.*, No.
1:12-cv-01203-VEC, ECF 206 (Order); ECF 200-1 at 8 (Notice) (Oct. 19, 2015), submitted herewith
as Exs. B-C.

## V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Settlement Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to object to the Settlement, request exclusion from the Settlement Class, or submit Proof of Claim Forms, could be issued.  *See* ECF 176 at 17-23.  In the Preliminary Approval Order, the Court addressed the requirements for Settlement Class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Settlement Class for purposes of settlement.  ECF 188, ¶¶2-3.  Specifically, in the Preliminary Approval Order, the Court preliminarily certified a Settlement Class of "all Persons who purchased or otherwise acquired CBS common stock during the period from November 29, 2017 through July 27, 2018, inclusive."  *Id.*, ¶2.  In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.  *Id.*, ¶4.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.

## VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable

effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Settlement Class Members satisfy these standards.  The Court-approved Notice and Proof of Claim Form (the "Notice Packet") amply inform Settlement Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Settlement Class Members' rights to request exclusion from the Settlement Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses.  The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim Form; (ii) requesting exclusion from the Settlement Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average-per-share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys'

fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to potential Settlement Class Members, brokers, and nominees on June 13, 2022. As of August 18, 2022, 162,114 copies of the Notice Packet have been mailed. Murray Decl., ¶11. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*. *Id.*, ¶12, Ex. C. Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement. *Id.*, ¶14.

The combination of individual First-Class Mail to all potential Settlement Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'"). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.   CONCLUSION

The $14.75 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a very good recovery for the Settlement Class under the circumstances, particularly in light of the significant litigation risks Lead Plaintiff faced, including the very real risk of the Settlement Class receiving no recovery at all.  For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan as fair, reasonable, and adequate, and overrule the objection.

DATED:  August 19, 2022                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           VINCENT M. SERRA

                                           _____
                                               VINCENT M. SERRA

                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com
                                           vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
LAURIE L. LARGENT
LAURA ANDRACCHIO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
elleng@rgrdlaw.com
jonahg@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 19, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ VINCENT M. SERRA
VINCENT M. SERRA

ROBBINS GELLER RUDMAN
   & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  vserra@rgrdlaw.com

## Mailing Information for a Case 1:18-cv-07796-VEC Samit v. CBS Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laura Andracchio**
  LAndracchio@rgrdlaw.com

- **Mary Katherine Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W. Brown**
  dbrown@paulweiss.com,Mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,scaesar@rgrdlaw.com

- **Steven M. Cady**
  scady@wc.com

- **Alexander Leonard Cheney**
  acheney@willkie.com,maosdny@willkie.com

- **Todd G. Cosenza**
  tcosenza@willkie.com,maosdny@willkie.com

- **Scott A Edelman**
  sedelman@gibsondunn.com

- **Zeh Sheena Ekono**
  maosdny@willkie.com,zekono@willkie.com

- **Brad D. Feldman**
  bfeldman@paulweiss.com,mao_fednational@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Francis Hans , Jr**
  Richard.Hans@dlapiper.com,ivy.hamlin@dlapiper.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com,richard-hans-7005@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,bmcginty@paulweiss.com,mao_fednational@paulweiss.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Andrew J. Levander**
  andrew.levander@dechert.com,christopher.ruhland@dechert.com,nycmanagingclerks@dechert.com,AutoDocket@dechert.com,9833472420@filings.docketbird.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Angela Liu**
  angela.liu@dechert.com

- **Jessica Ann Masella**
  Jessica.Masella@dlapiper.com,jessica-masella-8419@ecf.pacerpro.com

- **Margaret Mortimer**
  margaret.mortimer@dechert.com

- **Rahul Mukhi**
  rmukhi@cgsh.com,maofiling@cgsh.com

- **Tariq Mundiya**
  maosdny@willkie.com,tmundiya@willkie.com

- **Sharon L. Nelles**
  NELLESS@SULLCROM.COM,s&cmanagingclerk@sullcrom.com,sharon-nelles-8045@ecf.pacerpro.com

- **New York Office of the Attorney General**
  shamiso.maswoswe@ag.ny.gov

- **Beth Deborah Newton**
  newtonb@sullcrom.com,s&cmanagingclerk@sullcrom.com,beth-newton-9897@ecf.pacerpro.com

- **Jonathan Bradley Pitt**
  jpitt@wc.com,jonathan-pitt-1187@ecf.pacerpro.com

- **Andrew R. Podolin**
  APodolin@perkinscoie.com,RKOManagingClerk@rkollp.com

- **Matthew McPherson Balf Riccardi**
  MRiccardi@perkinscoie.com,MAplogan@perkinscoie.com,michellerose@perkinscoie.com,docketnyc@perkinscoie.com,nvargas@perkinscoie.com

- **Lee S Richards , III**
  LeeRichards@perkinscoie.com,michellerose@perkinscoie.com,nvargas@perkinscoie.com

- **Katharine Rodgers**
  rodgersk@sullcrom.com,katherine-rodgers-0146@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Vincent Michael Serra**
  vserra@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Brendan V.. Sullivan , Jr**
  bsullivan@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

John Lantz
,