UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
GENE SAMIT and JOHN LANTZ,
Individually and on Behalf of All Others
Similarly Situated,

                            Plaintiffs,

     vs.

CBS CORPORATION and LESLIE
MOONVES,

                         Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:18-cv-07796-VEC
**(Consolidated)**

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
EXPENSES AND AN AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-
4(a)(4)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     HISTORY AND BACKGROUND OF THE LITIGATION...............................................3

III.    ARGUMENT ........................................................................................................3

     A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
          from the Common Fund...........................................................................3

     B.    The Court Should Award a Reasonable Percentage of the Common Fund............4

     C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
          the-Fund Method....................................................................................7

     D.    The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied...........8

     E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable .................12

          1.    The Time and Labor Expended by Counsel ................................................12

          2.    The Risks of the Litigation .......................................................13

          3.    The Magnitude and Complexity of the Litigation .....................................17

          4.    The Quality of Representation Supports the Requested Fee ....................18

          5.    Public Policy Considerations ....................................................19

          6.    The Settlement Class's Reaction to the Fee Request to Date
             Supports the Requested Fee......................................................20

IV.     COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND
      NECESSARY TO THE PROSECUTION OF THIS ACTION .......................................20

V.      LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15
      U.S.C. §78u-4(a)(4) ............................................................................21

VI.     CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ........................................................................15

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ......................................................13

*Athale v. Sinotech Energy Ltd., et al.*,
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ...................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ............................................................................................4

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................................5, 7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................3

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ............................................................................6

*Chatelain v. Prudential-Bache Sec. Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................18

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..............................................11, 18

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  2015 U.S. Dist. LEXIS 181932 (S.D.N.Y. Oct. 15, 2015) ..............................8, 22

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ..........................................................3, 6, 9, 18

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Entm't*,
  2021 WL 2736135 (S.D.N.Y. June 30, 2021) ..................................................22

*Cornwell v. Credit Suisse Grp., et al.*,
  2011 WL 13263367 (S.D.N.Y. July 20, 2011) ..................................................11

**Page**

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................................................5, 11

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)..................................................................................14

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ..............................................................................6

*Fleming v. Impax Labs. Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................................9

*Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*,
925 F.3d 63 (2d Cir. 2019),
*cert denied*, __U.S.__, 140 S. Ct. 385 (2019).............................................3, 4, 6, 7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................... *passim*

*Guevuora Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .....................................................10

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .................................................................................6

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
No. 1:18-cv-00299-AJN-SLC, ECF 230
(S.D.N.Y. Feb. 14, 2022)........................................................................................7

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) .............................................................................4

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................................4, 23

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) .............................................................................15

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)...............................................................6, 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................................18

*In re Bayer AG Sec. Litig.*,
2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ......................................................18

**Page**

*In re BHP Billiton Ltd. Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)........................................................8, 11

*In re Bisys Sec. Litig.*,
2007 WL 2049726 (S.D.N.Y. July 16, 2007) ..................................................................19

*In re BRF S.A. Sec. Litig.*,
No. 1:18-cv-02213-PKC, ECF 178
(S.D.N.Y. Oct. 23, 2020) .................................................................................................7

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................................................21

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................................7, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..........................................................10, 14

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .........................................................................................14

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ..................................................................8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016)...............................................................................8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................ *passim*

*In re Genworth Fin. Inc. Sec. Litig.*,
No. 1:14-cv-02392-AKH, ECF 178
(S.D.N.Y. Nov. 16, 2017) ................................................................................................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................6, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).............................................................................................6

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................11, 18

*In re IMAX Sec. Litig.*,
2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)..................................................................10

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................21

*In re Interpublic Sec. Litig.*,
    2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)............................................................4

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)...........................................................8

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................................................15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................16, 19

*In re Nielsen Holdings Plc Sec. Litig.*,
    No. 1:18-cv-07143-JMF, ECF 156 (S.D.N.Y. July 21, 2022) .................................22

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010).......................................................................15

*In re Parking Heaters Antitrust Litig.*,
    2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)...........................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997).........................................................................14

*In re Qudian Inc. Sec. Litig.*,
    2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...........................................................22

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).....................................................................................21

*In re Sadia S.A. Sec. Litig.*,
    2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) .........................................................14

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................4, 11, 14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 305 (1st Cir. 1995).......................................................................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).............................................. *passim*

**Page**

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964)..................................................................................................4

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ......................................................................................6

*Lopez v. Fashion Nova*,
  2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) .........................................................11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................6, 20

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).............................................................................................7, 10

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ...................................................5, 6, 7

*Patel v. L-3 Commc'ns Holdings, Inc.*,
  No. 1:14-cv-06038-VEC, ECF 167 (S.D.N.Y. Aug. 17, 2017)................................8

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ...................................................................................6

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .........................................................................................6

*Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................................14, 19

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...............................................................................15

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)........................................................................................5

*Spicer v. Pier Sixty LLC*,
  2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012).........................................................11

*Strougo v. Barclays PLC, et al.*,
  No. 1:14-cv-05797-VM-DCF, ECF 146 (S.D.N.Y. June 3, 2019)............................8

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993).....................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).....................................................................................................4

**Page**

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ........................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................4, 6, 11

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................20

*Xiang v. Inovalon Holdings, Inc., et al.*,
    No. 1:16-cv-04923-VM-KNF, ECF 191 (S.D.N.Y. July 15, 2019) .........8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)..................................................................................................17
    §78u-4(a)(4) ...............................................................................1, 2, 22
    §78u-4(a)(6) ............................................................................................6

Lead Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses in connection with its representation of the Settlement Class in the above-captioned litigation, and for an award to Lead Plaintiff Construction Laborers Pension Trust for Southern California ("Lead Plaintiff") in connection with its representation of the Settlement Class.

## I.   INTRODUCTION

Through their efforts, Lead Counsel secured a $14,750,000 settlement for the benefit of the Settlement Class.  The Settlement is a very good result given the serious obstacles to recovery, the numerous credible defenses to liability and damages that Defendants have articulated, the fact that the Court might have accepted Defendants' arguments at summary judgment following the completion of fact and expert discovery, and the recovery relative to the amount of estimated recoverable damages suffered by the Settlement Class.[1]  To obtain this Settlement, Lead Plaintiff and Lead Counsel overcame a number of significant challenges that existed from the filing of the initial complaint.  In recognition of these risks and the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of 25% of the Settlement Amount, and $355,355.92 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, plus interest on both amounts.  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated*

---

[1]    Capitalized terms used herein are defined and have the meanings contained in the Stipulation and Agreement of Settlement (ECF 177) (the "Stipulation"), the accompanying Declaration of Spencer A. Burkholz in Support of:  (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Burkholz Declaration"), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

*Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In addition, Lead Plaintiff seeks an award of $22,255.46 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its time and unreimbursed expenses incurred in its representation of the Settlement Class.

This fee request has the full support of Lead Plaintiff.  *See* Declaration of Robert O. Glaza, ¶7-8, submitted herewith ("Lead Plaintiff Declaration").  In addition, following an extensive Court-ordered notice program in which over 162,000 Notices have been mailed to potential Settlement Class Members, to date not a single Settlement Class Member has objected to the requested fees or the expenses (not to exceed $500,000, as set forth in the Notice).

As detailed below, in the Burkholz Declaration, and in the Settlement Memorandum, the Settlement achieved here represents a very good result for Lead Plaintiff and the Settlement Class, particularly when judged in the context of the significant litigation risks in this Action.  The $14.75 million Settlement that Lead Counsel obtained provides the Settlement Class with an immediate and certain recovery in a case that faced significant risks.  In achieving this result, Lead Counsel worked more than 5,100 hours over the course of more than four years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorney fee award of 25%, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel in prosecuting the Action, as well as the result achieved.  When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 25% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the expenses requested by Lead Counsel are reasonable in

amount and were necessarily incurred, and the request by Lead Plaintiff adequately reflects its efforts and contributions to the litigation.[2]

## II.      HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and Lead Counsel's prosecution of this case (including key pleadings, motions, discovery, and mediation efforts) is set forth in the accompanying Burkholz Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.     ARGUMENT

### A.      Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert denied*, __U.S.__, 140 S. Ct. 385 (2019).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at

---

[2]   Lead Counsel's fee and expense request includes the time and expenses of additional counsel The Rosen Firm, P.A. and Johnson Fistel, LLP, as reflected in each firm's accompanying declaration.

*10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2.  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'"); *Fresno Cnty.*, 925 F.3d at 68.  Fairly compensating Lead Counsel for the risks it took in bringing this Action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## B.    The Court Should Award a Reasonable Percentage of the Common Fund

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a

percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *see also Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (citing *In re Parking Heaters Antitrust Litig.*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019)).  The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[3]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").  The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is

---

[3]     *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

toward the percentage method." *Wal-Mart Stores*, 396 F.3d at 121; *see also Noom*, 2022 WL 2705354; *City of Providence*, 2014 WL 1883494, at *11-*12.[4]

Recently, the Second Circuit reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 63, 72 (confirming the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases). *Id.* at 72.

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as

---

[4] All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common-fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common-fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court

should award Lead Counsel attorneys' fees based on a percentage of the fund.

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to

approximate what counsel would receive if they were bargaining for their services in the

marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  An "'ideal proxy' for the award

should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for

legal services would agree." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352

(S.D.N.Y. 2014).  If this were a non-class action, the customary fee arrangement would be

contingent and in the range of 33% of the recovery. *See Blum*, 465 U.S. at 903 ("'In tort suits, an

attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore,

the fee is directly proportional to the recovery.'") (Brennan, J., concurring).

Here, the Court does not need an "ideal proxy" for what counsel would receive if they were

bargaining for their services in the marketplace, because Lead Plaintiff supports the requested fee

percentage.  *See* Lead Plaintiff Decl., ¶¶7-8.  Moreover, the requested 25% fee is well within the

range of percentage fees awarded by courts within the Second Circuit (including this Court) in other

comparable complex cases.  *See, e.g.*, *Noom*, 2022 WL 2705354, at *10 (awarding fee of one-third

of $56 million settlement fund, finding "[]fee equal to one-third of a settlement fund is routinely

approved in this Circuit"); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't

Holdings, Inc.*, No. 1:18-cv-00299-AJN-SLC, ECF 230 (S.D.N.Y. Feb. 14, 2022) (awarded 33-1/3%

fee of $18 million settlement) (Ex. A); *In re BRF S.A. Sec. Litig.*, No. 1:18-cv-02213-PKC, ECF 178

(S.D.N.Y. Oct. 23, 2020) (awarded 25% of fee of $40 million settlement) (Ex. B); *Xiang v. Inovalon

Holdings, Inc., et al.*, No. 1:16-cv-04923-VM-KNF, ECF 191 (S.D.N.Y. July 15, 2019) (awarding

27% fee on $17 million settlement) (Ex. C); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 U.S. Dist. LEXIS 181932, at \*12-\*13 (S.D.N.Y. Oct. 15, 2015) (awarding 30% fee on $33 million settlement); *Patel v. L-3 Commc'ns Holdings, Inc.*, No. 1:14-cv-06038-VEC, ECF 167 at ¶4 (S.D.N.Y. Aug. 17, 2017) (awarding 25% fee on $34.5 million settlement) (Ex. D); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at \*1 (S.D.N.Y. June 11, 2020) (awarding one-third of $18.5 million settlement, plus expenses); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at \*6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of $75 million recovery); *Strougo v. Barclays PLC, et al.*, No. 1:14-cv-05797-VM-DCF, ECF 146 at ¶15 (S.D.N.Y. June 3, 2019) (awarding 33% of $27 million settlement) (Ex. E); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at \*1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 25% of $50 million recovery, plus expenses); *In re Genworth Fin. Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, ECF 178 at ¶3 (S.D.N.Y. Nov. 16, 2017) (awarding 25% of $14.75 million recovery, plus expenses) (Ex. F); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at \*9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016).[5]

### D.   The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied

When using the percentage-of-the-fund method, courts can also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353. When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar method requires a two-part analysis: "first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly

---

[5]   All unreported authorities are attached hereto as Exhibits A-I.

rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence*, 2014 WL 1883494, at *13. Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Counsel and their paraprofessionals have spent, in the aggregate, 5,125.60 hours in the prosecution of this case, producing a total lodestar amount of $4,646,891.00 when multiplied by counsel's billing rates. *See* accompanying Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Decl."), Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Fistel Decl."), and Declaration of Phillip Kim Filed on Behalf of The Rosen Law Firm, P.A. in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Rosen Decl.").[6] The amount of attorneys' fees requested by Lead Counsel herein, $3,687,500 represents approximately 80% of counsel's aggregate lodestar, resulting in a negative multiplier.[7] "Courts have repeatedly

---

[6] In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status. Here, the lawyers and paraprofessionals are experienced securities practitioners with track records of success, and among the most prominent and well-regarded securities practitioners in the nation. Lead Counsel's billing rates are reasonable and have recently been judicially approved. *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) ("The Court finds [Robbins Geller's] billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); Hr'g Tr. at 160:22-24, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable.") (Ex. G hereto); Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) ("I find that these billable rates [for Robbins Geller] based on the timekeeper's title, specific years of experience, and market rates for similar professionals in their fields . . . to be reasonable in this context.") (Ex. H hereto).

[7] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, 'the percentage fee would represent a negative multiplier of the lodestar.'" *Guevuora Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019); *In re IMAX Sec. Litig.*, 2012 WL 3133476, at *7 (S.D.N.Y. Aug. 1, 2012) (finding 33% award reasonable under the circumstances, which included "a negative multiplier in relation to counsel's lodestar fee"); *In re Veeco Instruments Sec. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) ('Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for their contingent risk factor, their fee request amounts to a deep discount from their lodestar.").

In cases of this nature, fees representing positive multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors.  *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

The multiplier of 0.79 reflected here is far below the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere, and is fully justified here given the effort required, the risks faced and overcome, and the results achieved.  Indeed, "'[i]n contingent litigation, lodestar multipliers of over 4 are routinely awarded by courts[.]'"  *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (quoting *Telik*, 576 F. Supp. 2d at 590); *see also Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, '[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases,

even higher multipliers.'"); *Wal-Mart Stores*, 396 F.3d at 123 (upholding multiplier of 3.5); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (awarding fee representing a 2.15 multiplier, which court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude"); *BHP Billiton*, 2019 WL 1577313, at *1-*2 (awarding fee representing 2.7 multiplier); *Athale v. Sinotech Energy Ltd., et al.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65, finding it "not unreasonable under the particular facts of this case" and "sufficient to compensate counsel for the work they have put in and the risks they took, as well as to reward them for zealously litigating the dispute and timely resolving the action'"); *Cornwell v. Credit Suisse Grp., et al.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (awarding fee representing a multiplier of 4.7); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases).

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). As detailed in the Burkholz Declaration, based on its efforts in litigating this case and producing an excellent result, Lead Counsel believes the requested fee, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E.   The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1.   The Time and Labor Expended by Counsel

Lead Counsel expended substantial time and effort pursuing the Action on behalf of the Settlement Class.  Since the Action commenced nearly four years ago, Lead Counsel for Lead Plaintiff and their paraprofessionals devoted in excess of 5,100 hours to prosecuting the Settlement Class's claims.  As detailed in the Burkholz Declaration, submitted herewith, counsel, among other things:

- conducted an extensive factual investigation into the underlying facts;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted a detailed amended complaint;

- opposed Defendants' motions to dismiss;

- conducted and responded to class certification discovery;

- moved for class certification;

- consulted damages experts in connection with class certification and mediation;

- participated in lengthy arm's-length settlement negotiations, including a mediation with the Hon. Layn R. Phillips (Ret.) and follow-up negotiations with the assistance of Judge Phillips; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally* Burkholz Decl.

Moreover, Lead Counsel, with the assistance of its in-house damages expert, prepared the proposed Plan of Allocation based primarily on an analysis estimating the amount of artificial inflation in the price of CBS common stock during the Settlement Class Period.  Throughout the Action, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Additional hours and resources will necessarily be expended assisting Members of the Settlement Class with the completion and submission of their Proof of Claim Forms, shepherding the claims process, and responding to Settlement Class Member inquiries.  *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).  The significant amount of time and effort devoted to this case by Lead Counsel to obtain a $14.75 million recovery – work that will not end with the Court's approval of the Settlement – confirms that the 25% fee request is reasonable.

### 2. The Risks of the Litigation

#### a. The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor.  *Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592.  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success.  Nor, particularly in complicated
> cases producing large recoveries, is it just to make a fee depend solely on the
> reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger*, 209 F.3d at

43.  "Little about litigation is risk-free, and class actions confront even more substantial risks than

other forms of litigation."  *Tchrs.' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3

(S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to

take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re

Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts

have recognized that the attorney's contingent fee risk is an important factor in determining the fee

award.").  This risk encompasses not just the risk of no payment, but also the risk of underpayment.

*See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee

award where court failed to account for, among other things, risk of underpayment to counsel).

When considering the reasonableness of attorneys' fees in a contingency action, the court should

consider the risks of the litigation at the time the suit was brought.  *See Goldberger*, 209 F.3d at 55;

*In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this litigation on a wholly contingent-fee basis, investing a

substantial amount of time and money to prosecute a risky action with no guarantee of compensation

or even the recovery of expenses.  Unlike Defendants' counsel, who are paid substantial hourly rates

and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for

any time or expenses since this case began in 2018, and would have received no compensation or

payment of its expenses had this case not been resolved successfully.

From the outset, Lead Counsel understood that it was embarking on a complex, expensive,

and lengthy litigation with no guarantee of ever being compensated for investing the time and money

the case would require.  In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Action and that funds were available to compensate staff and to pay for the considerable costs that a case such as this entails.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees at all.  Indeed, it is possible that, if not for this Settlement, the remaining alleged misstatement would have been dismissed at summary judgment or following trial.[8]  The Court has indicated that it believed Lead Plaintiff would have a very difficult time establishing liability for the remaining alleged misstatement.[9]

Losses in contingent-fee litigation, especially those brought under the PSLRA, are exceedingly expensive.  Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the

---

[8]    Moreover, it is wrong to presume that a law firm handling complex contingent litigation always wins.  There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite their diligence and expertise. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

[9]    The Court indicated to the parties at a status conference following issuance of the motion to dismiss order that Lead Plaintiff "barely survived the motion to dismiss" and that it had "a big note of skepticism that [Lead Plaintiff would] be able to prove" the case.  Hr'g. Tr. at 12:17-20 (Feb. 21, 2020).

Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.    Risks of Establishing Liability

While Lead Plaintiff remains confident in its claims, its ability to prove liability was far from certain.  As detailed in the Burkholz Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the falsity of the misstatements and omissions alleged, whether they were made with scienter, and loss causation.  Burkholz Decl., ¶¶21, 50-54.  More specifically, Defendants argued that Lead Plaintiff failed to allege that the remaining allegedly false and misleading statement – Moonves' November 29, 2017 statement – was actionable, because it was too general and did not contain any promise or certainty about his knowledge of his past misconduct or that such conduct would likely become public.  *Id.*, ¶50.  Defendants also argued that there was no allegation that Moonves' statements were false at the time they were made or that Moonves did not hold the opinions he expressed.  Although one alleged misstatement survived Defendants' motion to dismiss, the Court did grant the motion with respect to Lead Plaintiff's other allegations of materially false and misleading statements and omissions.  The Court also dismissed the Former Defendants from the case, holding that they lacked the requisite scienter under §10(b).  Burkholz Decl., ¶27.  The surviving alleged misstatement would no doubt be challenged again on summary judgment.  Therefore, whether Lead Plaintiff ultimately would prove liability was far from assured.

### c.    Risk of Establishing Causation and Damages

With respect to proving causation and damages, Defendants would continue to attack the causal link between the remaining alleged misstatement and Lead Plaintiff's losses as well as the damages calculations of Lead Counsel's expert which, if accepted, would severely limit, or entirely

eliminate, the amount of damages that could be recovered.  Defendants argued that there was no causal link between the alleged misstatement and the decline in CBS's share price because:  (1) the market was already of aware of potential sexual misconduct allegations against Moonves as early as January 2018; and (2) the corrective disclosures did not reveal to the market the falsity of the *Variety* Statement because that statement could not reasonably be read to make any representations about Moonves' conduct.  *Id.*  Defendants would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how the Court or a jury would decide these issues.  The damage assessments of the parties' respective trial experts would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that the Court or a jury could be swayed by experts for Defendants to minimize the Settlement Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 3.    The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia*, 2019 WL 5257534, at *18 ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'").  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable

challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described herein, this Action involved a number of difficult and complex questions concerning liability and damages that required, and would have continued to require, extensive efforts by Lead Counsel and consultation with experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 25% fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at §III.C.; *see also FLAG Telecom*, 2010 WL 4537550, at *28; *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Lead Counsel are experienced securities class action and complex litigation practitioners. *See* Robbins Geller Decl., Ex. F. This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Action and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation. *See Tchrs.' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Lead Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 25% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Willkie Farr & Gallagher LLP and Dechert LLP, who presented very skilled defenses and spared no effort in representing their clients. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Action through trial and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Settlement Class.

### 5. Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

6.    **The Settlement Class's Reaction to the Fee Request to Date Supports the Requested Fee**

To date, the Claims Administrator has sent over 162,000 copies of the Notice to potential Settlement Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus expenses not to exceed $500,000, plus interest on both amounts.[10]  The time to object to the fee request expires on September 19, 2022.  To date, not a single objection to the fee and expense amounts set forth in the Notice was received.  Such a "low level of objection is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  The reaction of the Settlement Class supports the fairness of the fee request.[11]

Additionally, Lead Plaintiff supports the fee request.  Lead Plaintiff Decl., ¶¶7-8.  Lead Plaintiff played an active role in the Action and closely supervised the work of Lead Counsel.

## IV.  COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

Counsel for Lead Plaintiff also respectfully request an award of $355,355.92 in expenses incurred while prosecuting the Action.  Counsel have submitted declarations regarding these expenses, which are properly recovered by counsel.  *See* Robbins Geller Decl., ¶¶5-6; Fistel Decl., ¶¶5-6, Rosen Decl., ¶¶5-6.  *See, e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is

---

[10]    *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A (Notice).

[11]    Lead Counsel will respond to any objections to the fee and expense request in its reply brief, due October 27, 2022.

well accepted that counsel who create a common fund are entitled to the reimbursement of expenses

that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180,

183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to

the representation of the class).

Counsel's expenses include, for example, the costs of hiring experts to assist in their efforts,

consultants, travel, document database management and storage, mediating the Settlement Class's

claims, and transcript and reporting fees.  A complete breakdown by category of the expenses

incurred is set forth in the accompanying Firm Declarations.  These expenses were critical to Lead

Counsel's success in achieving the Settlement.  *See Glob. Crossing*, 225 F.R.D. at 468 ("The

expenses incurred – which include investigative and expert witnesses, filing fees, service of process,

travel, legal research and document production and review – are the type for which 'the paying,

arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the

Settlement fund.").  Not a single objection to the expense amount set forth in the Notice was

received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest

earned on such amount at the same rate as that earned by the Settlement Fund.

## V.     LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff seeks approval of an award of $22,255.46 in time and expenses incurred in

representing the Settlement Class.[12]  The PSLRA allows an "award of reasonable costs and expenses

(including lost wages) directly relating to the representation of the class" to "any representative party

serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  Many courts, including this Court, have

approved such awards under the PSLRA to compensate class representatives for the time and effort

---

[12]   This amount represents $20,005.46 in unreimbursed legal fees for its outside counsel and $2,250 for Mr. Glaza's time.  Lead Plaintiff Decl., ¶9.

they spent on behalf of the class.  *See, e.g.*, *In re Nielsen Holdings Plc Sec. Litig.*, No. 1:18-cv-07143-JMF, ECF 156 at ¶¶7-8 (S.D.N.Y. July 21, 2022) (awarding $17,750 and $5,625 to plaintiffs) (Ex. I); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Entm't*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.70 to lead plaintiff); *Kinross Gold*, 2015 U.S. Dist. LEXIS 181932, at *14 (awarding $16,800.11 to Lead Plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly related to their representation of the Class").

As set forth in the Lead Plaintiff Declaration, Lead Plaintiff took an active role in prosecuting the Action, including: (1) communicating with Lead Counsel and its outside counsel on issues and developments in the Action; (2) reviewing documents filed in the case; (3) consulting with Lead Counsel on litigation and settlement strategy; (4) collecting documents in response to Defendants' requests, responding to interrogatories, and providing deposition testimony; and (5) reviewing and approving the proposed Settlement.  Lead Plaintiff Decl., ¶¶4, 9.

These are precisely the types of activities courts have found support PSLRA awards to class representatives.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

The Notice informed potential Settlement Class Members that Lead Plaintiff may seek approval for up to $22,500 for its time and expenses incurred in representing the Settlement Class. Murray Decl., Ex. A (Notice) at 7.  The time and expenses requested, $22,255.46, is below that

amount.  To date, no Settlement Class Member has objected to such award.  Accordingly, Lead Plaintiff's request is reasonable and fully justified under the PSLRA and should be granted.

## VI.     CONCLUSION

Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Amount, plus expenses in the amount of $355,355.92, plus interest on both amounts, and $22,255.46 to Lead Plaintiff, as permitted by the PSLRA.

DATED:  August 19, 2022                  Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         VINCENT M. SERRA

                                         _____
                                                VINCENT M. SERRA

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN
LAURIE L. LARGENT
LAURA ANDRACCHIO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
elleng@rgrdlaw.com
jonahg@rgrdlaw.com
llargent@rgrdlaw.com
landracchio@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 19, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ VINCENT M. SERRA
VINCENT M. SERRA

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  vserra@rgrdlaw.com

# Mailing Information for a Case 1:18-cv-07796-VEC Samit v. CBS Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laura Andracchio**
  LAndracchio@rgrdlaw.com

- **Mary Katherine Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W. Brown**
  dbrown@paulweiss.com,Mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,scaesar@rgrdlaw.com

- **Steven M. Cady**
  scady@wc.com

- **Alexander Leonard Cheney**
  acheney@willkie.com,maosdny@willkie.com

- **Todd G. Cosenza**
  tcosenza@willkie.com,maosdny@willkie.com

- **Scott A Edelman**
  sedelman@gibsondunn.com

- **Zeh Sheena Ekono**
  maosdny@willkie.com,zekono@willkie.com

- **Brad D. Feldman**
  bfeldman@paulweiss.com,mao_fednational@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Francis Hans , Jr**
  Richard.Hans@dlapiper.com,ivy.hamlin@dlapiper.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com,richard-hans-7005@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,bmcginty@paulweiss.com,mao_fednational@paulweiss.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Andrew J. Levander**
  andrew.levander@dechert.com,christopher.ruhland@dechert.com,nycmanagingclerks@dechert.com,AutoDocket@dechert.com,9833472420@filings.docketbird.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Angela Liu**
  angela.liu@dechert.com

- **Jessica Ann Masella**
  Jessica.Masella@dlapiper.com,jessica-masella-8419@ecf.pacerpro.com

- **Margaret Mortimer**
  margaret.mortimer@dechert.com

- **Rahul Mukhi**
  rmukhi@cgsh.com,maofiling@cgsh.com

- **Tariq Mundiya**
  maosdny@willkie.com,tmundiya@willkie.com

- **Sharon L. Nelles**
  NELLESS@SULLCROM.COM,s&cmanagingclerk@sullcrom.com,sharon-nelles-8045@ecf.pacerpro.com

- **New York Office of the Attorney General**
  shamiso.maswoswe@ag.ny.gov

- **Beth Deborah Newton**
  newtonb@sullcrom.com,s&cmanagingclerk@sullcrom.com,beth-newton-9897@ecf.pacerpro.com

- **Jonathan Bradley Pitt**
  jpitt@wc.com,jonathan-pitt-1187@ecf.pacerpro.com

- **Andrew R. Podolin**
  APodolin@perkinscoie.com,RKOManagingClerk@rkollp.com

- **Matthew McPherson Balf Riccardi**
  MRiccardi@perkinscoie.com,MAplogan@perkinscoie.com,michellerose@perkinscoie.com,docketnyc@perkinscoie.com,nvargas@perkinscoie.com

- **Lee S Richards , III**
  LeeRichards@perkinscoie.com,michellerose@perkinscoie.com,nvargas@perkinscoie.com

- **Katharine Rodgers**
  rodgersk@sullcrom.com,katherine-rodgers-0146@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Vincent Michael Serra**
  vserra@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Brendan V.. Sullivan , Jr**
  bsullivan@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
John Lantz
,
```