UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, GENE SAMIT and JOHN LANTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                                Plaintiffs,<br><br>        vs.<br><br>CBS CORPORATION and LESLIE MOONVES,<br><br>                                Defendants. | : : : : : : : : : : : : : : : : : : | Civil Action No. 1:18-cv-07796-VEC<br>**(Consolidated)**<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF SPENCER A. BURKHOLZ IN SUPPORT OF: (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78U-4(A)(4) |

I, SPENCER A. BURKHOLZ declares as follows pursuant to 28 U.S.C. §1746:

1.     I, Spencer A. Burkholz, am an attorney duly licensed to practice in the State of California and admitted to practice *pro hac vice* in the above-captioned action (the "Action"). I am a partner of the law firm of Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller").[1]

2.     On behalf of Robbins Geller, counsel for Lead Plaintiff Construction Laborers Pension Trust for Southern California ( "Lead Plaintiff") and the Settlement Class in the Action, I submit this declaration, pursuant to Federal Rule of Civil Procedure ("Rule") 23, in support of: (i) Lead Plaintiff's motion for final approval of the all-cash settlement of $14,750,000 (the "Settlement Amount") and approval of the proposed Plan of Allocation; and (ii) Lead Counsel's motion for an award of attorneys' fees and expenses and an Award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

3.     I have personal knowledge of the matters set forth herein based on my active participation in the prosecution and resolution of this Action. If called upon, I could and would competently testify that the following facts are true and correct.

## I.     INTRODUCTION AND OVERVIEW

4.     The Settling Parties have entered into a settlement of the Settlement Class's claims alleged in this securities class action against defendants CBS Corporation n/k/a Paramount Global ("CBS" or the "Company") and Leslie Moonves (collectively, "Defendants").

5.     The Settlement is a very good result for the Settlement Class. The Stipulation provides for the non-reversionary payment of $14,750,000 in cash to the Settlement Class in exchange for a release of the Released Claims (as defined in the Stipulation) against Defendants. As described herein, the Settlement is the product of Lead Plaintiff's and Lead Counsel's careful

---

[1]   Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated April 15, 2022 (the "Stipulation"). *See* ECF 177.

analysis and vigorous litigation of the claims, as well as extensive arm's-length settlement negotiations between the parties, which included a mediation session supervised by an experienced mediator, the Honorable Layn R. Phillips of Phillips ADR.

6.      The benefit to the Settlement Class must be weighed against the significant chance that it might obtain a much smaller recovery after years of protracted litigation – or none at all.  If at any stage of the litigation, Defendants were to prevail on their various arguments in opposition to class certification, disputing liability, or seeking to reduce or eliminate the Settlement Class's damages, the Settlement Class would have been left with little or no recovery.  The Settlement Amount represents a recovery of between 7%- 9% of reasonably recoverable damages as estimated by the Plan of Allocation, assuming Lead Plaintiff was able to establish liability – or more under Defendants' view of damages.  In sum, the Settlement provides for a substantial monetary benefit to the Settlement Class now, and is an excellent recovery in light of the significant risks involved in continued litigation.

7.      As detailed herein, the Settlement is the product of a comprehensive investigation, detailed analysis, and extensive arm's-length negotiations by experienced counsel, which involved the assistance of an experienced mediator.  Lead Counsel, working closely with Lead Plaintiff, negotiated the Settlement with a thorough understanding of the strengths and weaknesses of the claims asserted against each of the Defendants.  This understanding was based on Lead Counsel's vigorous efforts, which included, in addition to conducting a thorough investigation and opposing Defendants' motions to dismiss, conducting extensive discovery in connection with class certification, and reviewing the parties' various arguments, supported by expert testimony, for and against Lead Plaintiff's motion for class certification.  As a result of these efforts, Lead Counsel and

Lead Plaintiff were fully informed regarding the strengths and weaknesses of the case against each of the Defendants before agreeing to the Settlement.

8.    As discussed herein, Lead Plaintiff faced serious risks in going forward with the litigation.  Lead Plaintiff faced the significant risk that Defendants could ultimately be successful in showing, among other things, that: (i) CBS had no duty to disclose rumors regarding Mr. Moonves' conduct; (ii) even if the alleged misstatement was false, the allegations of motive and recklessness were insufficient; (iii) neither the July 27, 2018 article in *The New Yorker* nor the reports about the article on July 27 or other media reports between July 27-29 qualifies as a corrective disclosure; and (iv) Lead Plaintiff would be unable to establish class-wide damages for the asserted Class Period. *See* Declaration of Robert O. Glaza ("Lead Plaintiff Declaration"), ¶6, submitted herewith.  The Court granted in large part Defendants' motion to dismiss.  *Constr. Laborers Pension Trust v. CBS Corp.*, 433 F. Supp. 515 (S.D.N.Y. 2020).  Additionally, Lead Plaintiff faced the risk that the Court would deny its pending motion for class certification.  Accordingly, while Lead Counsel believes that the Settlement Class's claims have merit, there was a significant chance that one or more of Defendants' arguments may have ultimately proved insurmountable – and the Settlement Class may have ended up with little or no recovery.  The significance of these risks was heightened by the prospect of years of protracted litigation through costly fact and expert discovery, dispositive motions, a trial, and likely ensuing appeals.  The Settlement avoids these and other risks while providing a substantial and immediate monetary benefit to the Settlement Class.

9.    The other terms of the Settlement are the product of careful negotiations between the parties and are set forth in the Stipulation.  For all of the reasons stated herein, Lead Counsel believes that the Settlement is fair, reasonable and adequate, is in the best interests of the Settlement

Class, and should be approved.  Furthermore, the Settlement has the full support of the Lead Plaintiff.

10.    Counsel for Lead Plaintiff seeks attorneys' fees of 25% of the Settlement Amount, plus litigation expenses of $355,355.92, with interest thereon earned at the same rate as the Settlement Fund.  The fee request has Lead Plaintiff's full support.  Lead Plaintiff Declaration, ¶¶7-8.  The requested fee amounts to a negative multiple of counsel's "lodestar" (*i.e.*, the hourly rates multiplied by the hours spent on prosecuting and settling this Action).

11.    Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated May 13, 2022 (ECF 188) (the "Preliminary Approval Order"), the Notice and Proof of Claim were mailed to all Settlement Class Members who could be identified with reasonable effort, and the Summary Notice was published electronically on *Business Wire* and in print in *The Wall Street Journal*.  Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-12, submitted herewith.

12.    The Notice advised all recipients of, among other things: (i) the terms of the Settlement; (ii) the definition of the Settlement Class; (iii) their right to exclude themselves from the Settlement Class; (iv) their right to object to any aspect of the Settlement, including the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; and (v) the procedures and deadline for submitting a Proof of Claim Form in order to be eligible for a payment from the proceeds of the Settlement.

13.    The Court-ordered deadline for filing objections to the Settlement and for requesting exclusion from the Settlement is September 19, 2022.  To date, only one objection to the Plan of Allocation has been filed and there have only been two requests for exclusion.  No objections

- 4 -

challenging the amount of the Settlement have been filed.  If any additional objections are received, Lead Plaintiff will address them in a reply submission to be filed on or before October 27, 2022.

14.     Gilardi & Co. LLC ("Gilardi"), which has been retained by Lead Counsel and approved by the Court as Claims Administrator, has advised that as of August 18, 2022, a total of 162,114 copies of the Notice and Proof of Claim have been mailed to Potential Settlement Class Members.  Murray Decl., ¶11.  Additionally, the Notice, Proof of Claim Form, Stipulation, and Preliminary Approval Order have been posted on the website established for the Settlement: www.cbssecuritiessettlement.com.  *Id.*, ¶14.

## II.     THE NATURE AND HISTORY OF THE LITIGATION

### A.     The Commencement of the Action

15.     The initial complaint in this Action was filed in the United States District Court for the Southern District of New York, as a class action arising under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  ECF 1.

16.     In an Order dated November 30, 2018, the Court appointed Construction Laborers Pension Trust for Southern California as Lead Plaintiff, approved its selection of Robbins Geller as Lead Counsel, and set a date for the filing of an amended complaint.  ECF 43.  Thereafter, the parties agreed to a briefing schedule for the filing of an amended complaint and responses thereto, which the Court approved on December 14, 2018.  ECF 50.

17.     Lead Counsel conducted an extensive investigation of the alleged securities law violations.  This investigation included, but was not limited to, a review and analysis of: (i) CBS's public filings with the SEC; (ii) transcripts of CBS's public conference calls; (iii) CBS's press releases; (iv) reports of securities analysts following CBS; (v) independent media reports regarding Defendants; (vi) CBS's stock price movement and pricing and volume data; (vii) interviews with potential fact witnesses; and (viii) other publicly available information.

18.     Based on this investigation, Lead Counsel prepared a detailed Amended Complaint for Violations of Federal Securities Laws (the "Complaint") on behalf of all purchasers of CBS Class A and Class B common stock between September 26, 2016 and December 4, 2018, inclusive, against CBS, certain of its senior executives and certain current and former members of CBS's Board of Directors.  After receiving a short extension of time to file the amended complaint, Lead Plaintiff filed the Complaint on February 13, 2019.  ECF 59.

### B.     The Complaint and Motion to Dismiss

19.     The Complaint asserted claims under §§10(b) and 20(a) of the Exchange Act against Defendants and Former Defendants.  More specifically, Lead Plaintiff alleged that throughout the putative class period, Defendants and Former Defendants made numerous materially false and misleading statements and/or omissions regarding the Company's policies and corporate governance, the importance of key personnel, including Mr. Moonves, and other statements made to news media, which caused the price of the Company's common stock to trade at artificially inflated prices.

20.     Defendants continue to deny any and all allegations of wrongdoing, and deny that they have committed any act or omission giving rise to any liability or violation of law.

21.     On April 12, 2019, CBS and the Former Defendants jointly moved to dismiss the Complaint.  ECFs 77, 79-80.  Mr. Moonves moved separately to dismiss the Complaint.  ECFs 76, 78.  Defendants and Former Defendants argued, among other things, that: (1) Lead Plaintiff failed to adequately plead any material misstatements or omissions, including because the challenged disclosures were not misleading or inaccurate in any way; (2) there was no legal duty to disclose uncharged, adjudicated wrongdoing, including under Item 303 of Regulation S-K; (3) the Complaint failed to plead scienter given the lack of allegations that Defendants had contemporaneous knowledge of the sexual misconduct allegations against Mr. Moonves; and (4) Lead Plaintiff's theory of loss causation failed because neither the July 27, 2018 article in *The New Yorker* nor the

December 4, 2018 article in *The New York Times* qualified as a "corrective disclosure" under the law.

22.    On June 11, 2019, Lead Plaintiff served its oppositions to the motions to dismiss. ECF 82-83.  Lead Plaintiff argued, among other things, that the Complaint adequately pleaded actionable statements regarding CBS's Business Conduct Statement, the #MeToo movement and CBS's culture, and the importance of certain key personnel, including Mr. Moonves.  Lead Plaintiff likewise argued that the Complaint adequately pled a violation of Item 303, including by alleging that the failure to disclose that Mr. Moonves's departure was imminent created a trend, event or uncertainty that CBS and its management knew would likely have an adverse impact on the Company's future financial performance.  Lead Plaintiff also argued that Defendants and Former Defendants acted with scienter, including given Mr. Moonves's own past misconduct and knowledge that an article about this conduct would be published imminently.  Additionally, Lead Plaintiff argued that the Complaint sufficiently pled loss causation because CBS's stock price declined in response to the corrective disclosures, which were material and revealed previously undisclosed information about the risk that Mr. Moonves would be forced to leave the Company.  Lead Counsel spent significant time and resources performing the legal and factual research necessary to address Defendants' arguments and draft effective oppositions which demonstrated that the Complaint adequately pled claims under the Exchange Act.

23.    On July 16, 2019, Lead Plaintiff moved to strike certain exhibits submitted by Defendant CBS and the Former Defendants in support of their motion to dismiss, arguing that those exhibits: (i) were not referenced in the Complaint; (ii) were not subject to judicial notice; and (iii) were improperly relied upon by Defendants in an attempt to argue that public rumors existed during the putative class period that Mr. Moonves was about to experience a #MeToo moment.  ECF 89.

24.     Defendants opposed Lead Plaintiff's motion to strike on July 23, 2019 (ECF 90), and filed their reply memoranda in further support of their motions to dismiss on July 26, 2019.  ECF 91-95.

25.     Thereafter, on December 5, 2019, CBS and the Former Defendants requested to stay the Action, arguing that defendants' Rule 23(f) petition in *In re Signet Jewelers Ltd. Sec. Litig.*, No. 19-2268, ECF 82 (2d Cir. Nov. 20, 2019) would have an impact on the legal issues in this Action. ECF 100.  On December 9, 2019, Lead Plaintiff filed a response arguing that Defendants' request to stay the Action, which had not yet passed the motion to dismiss stage, pending the appeal of an order granting class certification in *Signet*, was inappropriate, without precedent, and should be rejected. ECF 102.

26.     On January 15, 2020, the Court entered an Opinion and Order denying in part and granting in part Defendants' motions to dismiss.  *CBS*, 433 F. Supp. 3d at 530-50.  The Court held that only one of the alleged misstatements was sufficient to support a claim under §§10(b) and 20(a) of the Exchange Act, and denied Lead Plaintiff's motion to strike as moot.  The sole alleged misstatement that the Court found to be adequately alleged – "though barely" – was a statement about the #MeToo movement and CBS's culture made by Defendant Moonves on November 29, 2017 at an industry conference (the "*Variety* Statement").  *Id.* at 539-40; *see also* ECF 124 (the Court noting that Lead Plaintiff "barely survived the motion to dismiss" and that it had "a big note of skepticism that [Lead Plaintiff would] be able to prove" the case).  As the Court stated, "Moonves, although aware of undisclosed facts that undermined the implications that could be drawn from his statement, suggested one thing 'when, in fact, [he] purportedly had little reason to believe [it].'" *CBS*, 433 F. Supp. 3d at 540.  "The Amended Complaint thus adequately alleges that Moonves's statement falsely implied that he was not personally at risk of a forced resignation or ouster based on

- 8 -

accusations of sexual harassment being leveled against him." *Id*. As a result of the Court's decision, the putative class period was narrowed to November 29, 2017 to July 27, 2018, inclusive (the "Class Period").

27.    Furthermore, the Court dismissed Lead Plaintiff's claims against the Former Defendants, holding that the Amended Complaint did not adequately allege that they had the requisite scienter under §10(b). *Id*. at 546. The remaining defendants, Defendants CBS and Mr. Moonves, answered the Amended Complaint on March 12, 2020. ECF 125, 126. Defendants expressly denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever, including (as set forth in more detail in the Stipulation) that they engaged in any conduct that constituted violations of §§10(b) and 20(a) and that Lead Plaintiff has asserted any valid claims as to any of them.

### C.    The Commencement of Discovery

28.    Following the Court's Order denying in part Defendants' motions to dismiss, Lead Counsel immediately commenced formal discovery efforts. Lead Counsel met and conferred with counsel for Defendants pursuant to Rule 26(f) concerning, among other things, the scope and timing of discovery. Lead Counsel and Defendants also prepared Civil Case Management Plans, which the parties submitted to the Court on February 13, 2020, along with a joint pretrial conference letter setting forth the parties' respective positions on, among other things, bifurcation of class and merits discovery. ECFs 120, 120-1, 120-2.

29.    On February 21, 2020, Lead Counsel and counsel for Defendants participated in an in-person initial pretrial conference with the Court, during which the Court ordered the parties to proceed first with class discovery. Following the conference, the Court issued an Order setting a further conference for March 20, 2020, at which the Court would enter a discovery schedule for class certification. ECF 121. The Court also directed the parties to meet and confer and submit a joint

letter outlining disagreements, if any, over the scope of class discovery. *Id*. On March 13, 2020, the parties submitted their joint letter addressing certain disputes over the scope of class certification discovery, along with a further proposed Civil Case Management Plan. ECF 127, 127-1. On March 17, 2020, the Court cancelled the March 20, 2020 conference and scheduled a teleconference for April 3, 2020 to discuss the remaining discovery disputes. ECF 129.

30.     On April 8, 2020, following the telephonic hearing, Lead Plaintiff submitted a letter significantly modifying its proposed prior class certification discovery requests in effort to minimize any potential burden. ECF 131. Defendants responded on April 17, 2020 (ECF 134), and on April 20, 2020, the Court issued an order denying Lead Plaintiff's application but casting doubt on Defendants' proposed argument at class certification that information contained in the corrective disclosures was already public, noting that "[t]he Supreme Court has made clear that rebutting the *Basic* presumption by demonstrating that news of the [truth] credibly entered the market and dissipated effects of [prior] misstatements is an issue for trial." ECF 135 (internal quotations omitted). On April 29, 2020, the parties submitted a proposed Amended Civil Case Management Plan containing a schedule setting certain deadlines for class discovery (ECF 136), which the Court so-ordered on April 30, 2020.

31.     Thereafter, the parties engaged in extensive discovery of class certification issues. On May 11, 2020 and August 25, 2020, Lead Plaintiff propounded separate sets of requests for the production of documents on Defendants, consisting of discrete requests germane to various class certification issues. Defendants served their responses and objections to Lead Plaintiff's initial set of document requests on June 10, 2020, and served their own requests for the production of documents on Lead Plaintiff on June 15, 2020, consisting of 41 requests, to which Lead Plaintiff responded and objected on July 14. 2020. After meeting and conferring with Defendants, Lead Plaintiff provided

supplemental responses on October 12, 2020.  Defendants served interrogatories on Lead Plaintiff on August 19, 2020, to which Lead Plaintiff responded on September 18, 2020, and after meeting and conferring with Defendants, amended on October 15, 2020.  Additionally, on October 12, 2020, Defendants served a second set of requests for documents on Lead Plaintiff, to which Lead Plaintiff responded and objected on November 11, 2020.

32.     In connection with the parties' document productions, Lead Counsel prepared and negotiated a draft protective order to govern the treatment of confidential information, which was entered by the Court on November 10, 2020.  ECF 153.  Lead Plaintiff made document productions to Defendants on July 31, 2020 and October 16, 2020.  Lead Counsel received documents from CBS on February 11, 2021 and, in response to Defendants' subpoenas, from Lead Plaintiff's investment managers, non-parties Intech Investment Management LLC and UBS Asset Management (Americas), Inc., in December and February 2021.  Lead Counsel attended and participated in the depositions of Lead Plaintiff's investment manager on February 10, 2021 (Thomas Digenan of UBS) and February 16, 2021 (Evan Kominsky of UBS).  Lead Counsel also prepared and thereafter defended the Rule 30(b)(6) deposition of Lead Counsel's representative, Robert O. Glaza, which took place on January 12, 2021.

33.     Lead Plaintiff filed the expert report of John D. Finnerty, Ph.D., in support of Lead Plaintiff's motion for class certification, on July 31, 2020.  ECF 142-6.  Dr. Finnerty's report focused on: (1) conducting studies and opining on the efficiency of the market for CBS stock during the Class Period; and (2) opining that the damages per share suffered by class members who purchased shares of CBS stock during the Class Period could be calculated on a class-wide basis.  *Id*. Defendants served the expert report of L. Adel Turki, Ph.D., on September 16, 2020, who opined as to whether: (1) the changes in the price of CBS stock at the beginning and end of the Class Period

indicated there was price impact; (2) Dr. Finnerty's proposed damages methodology is appropriate and reliable; and (3) Lead Plaintiff benefited from the alleged fraud. Lead Counsel defended Dr. Finnerty's deposition on December 16, 2020, and took the deposition of Dr. Turki on December 17, 2020.

### D.     Class Certification

34.     On March 19, 2021, Lead Plaintiff filed its motion for class certification. ECFs 160-162. Lead Plaintiff argued that it readily met the requirements of Rule 23, including the predominance requirement, in that: (1) Lead Plaintiff was entitled to the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson,* 485 U.S. 224 (1988), because CBS's stock traded in an efficient market, Defendants' misstatements were publicly known, and Lead Plaintiff purchased CBS stock during the Class Period; and (2) the evidence demonstrated that the corrective disclosures of the alleged misstatements impacted the price of CBS stock and Defendants would be unable to establish a complete absence of price impact from the disclosures necessary to rebut the presumption of reliance.

35.     Defendants filed their opposition to class certification on May 18, 2021, arguing that Lead Plaintiff could not overcome the hurdle of predominance on the issues of reliance and damages, assert claims that are typical of the alleged class it seeks to represent, or adequately serve as a class representative. ECFs 164-165. Specifically, Defendants argued that Lead Plaintiff was not entitled to the *Basic* presumption because Mr. Moonves's statement did not impact CBS's stock price, and that Lead Plaintiff did not establish that its methodology for calculating classwide damages was consistent with its theory of the case under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because Lead Plaintiff's damages model failed to account for how information about a potential merger with Viacom in 2018 impacted the price of CBS stock during the Class Period. Moreover, Defendants argued that Lead Plaintiff was an inadequate class representative because it

sold more shares of CBS stock during the Class Period than it acquired, and thus allegedly profited from the fraud.  Finally, Defendants asserted that Lead Plaintiff had a conflict of interest in that in order to recover damages, Lead Plaintiff would have to take positions regarding the corrective disclosures and the duration of the Class Period that would result in a lower recovery for the class as a whole.

36.     On June 23, 2021, Defendants filed a Notice of Supplemental Authority relating to a recent U.S. Supreme Court decision, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951 (2021), arguing that the opinion further supports their contention that Lead Plaintiff cannot satisfy Rule 23(b)(3)'s predominance requirement because Defendants carried their burden of proving that the *Variety* Statement had no price impact.  ECF 166.  Lead Plaintiff filed its reply brief on July 2, 2021, which included a response to the arguments raised in Defendants' June 23 filing. ECF 169.  In its reply, Lead Plaintiff argued, among other things, that Defendants failed to rebut the *Basic* presumption, including because they failed to demonstrate a complete lack of price impact from the corrective disclosures notwithstanding their argument that Mr. Moonves's statements did not affect the price of CBS stock at the beginning of the Class Period.  Lead Plaintiff also argued that the *Goldman* opinion did not support denying class certification because Mr. Moonves's statements were specific (not general) and the corrective disclosure related directly to, and even repeated, his November 29, 2017 statements.  Finally, Lead Plaintiff refuted Defendants' attacks on its proposed damages framework under Rule 23(b)(3) and adequacy under Rule 23(a), and Defendants' argument that Lead Plaintiff is atypical because it is a purported "net seller" under Dr. Finnerty's proposed damages model.

37.     Lead Plaintiff's motion for class certification was pending at the time the parties reached their agreement-in-principle to settle the Action.

**E.    Mediation and Settlement Efforts**

38.    The Settlement is the product of intense and hard-fought negotiations, which were conducted at arm's-length between experienced counsel and included a mediation with Judge Layn R. Phillips (Ret.) of Phillips ADR, a nationally recognized mediator experienced in securities class actions.

39.    In advance of the mediation, on October 28, 2019, the parties submitted and exchanged detailed mediation statements setting forth their respective positions on the strengths and weaknesses of their claims and defenses.   Lead Counsel also participated in a pre-mediation teleconference with Judge Phillips, and drafted written responses to questions from Judge Phillips about the case and upcoming mediation.

40.    On November 7, 2019, while Defendants' motion to dismiss was awaiting decision, the parties participated in a full-day in-person mediation session with Judge Phillips.  During the course of that mediation, Lead Counsel vigorously advocated Lead Plaintiff's positions regarding liability, damages, and the contours of what it believed would constitute a reasonable settlement. Although the parties made some progress during the mediation, they did not reach a settlement on that date.

41.    The parties continued to engage in post-mediation negotiations with the assistance of Judge Phillips from December 2019 through May 2021.  The parties' negotiations picked back up in December 2021.  On January 10, 2022, the parties reached an agreement-in-principle to resolve the Action for $14.75 million, subject to the negotiation of mutually acceptable terms of a settlement agreement.   Immediately thereafter, and over the course of the ensuing several months, Lead Counsel began drafting, and the parties negotiated, the details of the Settlement and the Stipulation. These negotiations continued until April 15, 2022, when the parties executed the Stipulation and finalized the supporting documents.  ECF 177.

**F.        Preliminary Approval of the Settlement**

42.        On April 15, 2022, Lead Plaintiff filed its Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, and Approval of Notice to the Settlement Class.  ECFs 175-176.  In connection therewith, Lead Plaintiff requested that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Settlement Class; (iii) approve the form and manner of the settlement notices to the Settlement Class Members; and (iv) schedule a hearing on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.  *Id.*

43.        On May 11, 2022, the Court held a teleconference with the parties, at which it directed the parties to file their Supplemental Agreement under seal and directed Lead Plaintiff to refile certain exhibits to the Settlement in compliance with edits provided at the conference.  ECF 184.  Following the filing of the Supplemental Agreement and revised exhibits, the Court granted Lead Plaintiff's motion for preliminary approval on May 13, 2022, and scheduled a settlement hearing for final approval on November 3, 2022, at 2:30 p.m.  ECF 188.

**III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS APPROVAL**

44.        The Settlement of $14,750,000 was the result of extensive, arm's-length negotiations between the parties, with the assistance of an experienced mediator.  The Settlement reflects the strengths and weaknesses of the case, and would not have been achieved without Lead Counsel's efforts described herein.

45.        As set forth below and in the Motion for Final Approval, the Settlement is a favorable result for the Settlement Class when evaluated in light of the risks of continued litigation and all of the other circumstances that courts consider when determining whether to grant final approval of a proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

- 15 -

46.     The Settlement avoids the hurdles Lead Plaintiff would have to clear, not only with respect to proving the full amount of the Settlement Class's damages but liability as well, and avoids the significant costs associated with further litigation of this complex securities action.  In view of the significant risks and additional time and expense involved in continuing to litigate this Action, Lead Counsel respectfully submits that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

### A.     The Risks Associated with Class Certification

47.     As referenced above, Defendants lodged several forceful arguments in opposition to Lead Plaintiff's class certification motion, any one of which, if accepted by the Court, would undermine any potential class recovery in this Action.  For example, Defendants argued that the typicality requirement was not satisfied because, among other things, Lead Plaintiff was subject to a unique defense that it was a "net seller" under its damages theory and actually benefitted from the alleged fraud by approximately $50,000.   Given this Court's recent opinion in *Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at \*2 (S.D.N.Y. Mar. 2, 2020) (Caproni, J.), which rejected a proposed lead plaintiff because his status as a net seller "effectively disqualifie[d] him from representing a class," Lead Plaintiff confronted a considerable risk that the Court would disqualify Lead Plaintiff on typicality grounds.

48.     Moreover, Lead Plaintiff faced the real risk that the Court would agree with Defendants' argument that Lead Plaintiff suffered from a "disabling conflict of interest" in that if the Court determined that July 27 and 30, 2018, were the corrective disclosure dates, Lead Plaintiff would have profited from the fraud by $50,000, as noted above, and not be entitled to relief.  Yet if the Court determined that July 27 is the only disclosure date, Defendants argued, Lead Plaintiff in fact will have suffered damages and may be entitled to a recovery.  Thus, according to Defendants, it would be in Lead Plaintiff's interest for July 27 to be the only corrective disclosure date, while it

would be in the interests of the class for both July 27 and 30 to be corrective disclosure dates given that Ronan Farrow's article in *The New Yorker* was published after the market close on July 27. While Lead Plaintiff disagreed with and vigorously opposed this argument, Lead Plaintiff recognized that if the Court found it – or any of Defendants' other arguments against certification – compelling, the Settlement Class would recover nothing.

**B.      The Risks to Establishing Liability, Causation, and Damages**

49.      While Lead Counsel believes that Lead Plaintiff would have ultimately prevailed on the merits at trial, Lead Counsel recognizes that there were considerable risks that made the outcome of this litigation uncertain.  Lead Counsel carefully considered these risks throughout the litigation and in recommending that Lead Plaintiff settle this matter.

50.      For example, Lead Plaintiff faced significant risks in proving that Mr. Moonves's November 29, 2017 statement – the lone remaining statement in the case – was materially false and misleading.  One of Defendants' main liability defenses was their argument that Mr. Moonves's November 29, 2017 statement was not actionable because it was too general and did not contain any promise or certainty about his knowledge of his past misconduct or that such conduct would likely become public.  Defendants would also likely continue to argue that Lead Plaintiff could not prove falsity because, according to Defendants, there is no allegation that Mr. Moonves's statements were false at the time they were made or that Mr. Moonves did not hold the opinions he expressed.  In making these arguments, Defendants emphasized the fact that the allegations of misconduct took place more than ten years before the *Variety* Statement, thus according to Defendants, further undermining Lead Plaintiff's argument that the statements were false and misleading at the time they were made.

51.      Defendants would further argue, as they did in their opposition to Plaintiffs' motion for class certification, that the *Variety* Statement was not material to investors because it was not

sufficiently publicly known.  Indeed, Defendants argued in their class certification opposition that there was no evidence that any analyst covering CBS or any CBS investor even saw the *Variety* Statement until after it was published in *The New Yorker* at the end of the Class Period.  Even if Lead Plaintiff had defeated this argument at class certification, there was no guarantee it would do so again at summary judgment or trial.

52.      And even if Lead Plaintiff succeeded in overcoming these arguments and establishing liability, Defendants' arguments and defenses relating to causation and damages presented additional obstacles.  Defendants would inevitably argue, as CBS did in its motion to dismiss, that Lead Plaintiff would not prevail on its loss causation arguments at summary judgment or trial – *i.e.*, that the subject of the *Variety* Statement was the cause of the actual loss suffered by the Settlement Class. More specifically, Defendants would continue to argue that there was no causal link between the alleged misstatements and omissions and the decline in CBS's share price because: (1) the market was already aware of potential sexual misconduct allegations against Mr. Moonves as early as January 2018; and (2) the corrective disclosures did not reveal to the market the falsity of the *Variety* Statement because that statement could not reasonably be read to make any representations about Mr. Moonves's conduct.

53.      Moreover, Defendants would contend that even if the lack of causation did not eliminate damages, various circumstances severely limited them.  Defendants would assert that any damages calculations must be limited to a decline of a single trading day, which they would argue is more than a sufficient time period for the market to absorb information about *The New Yorker* article, and nothing disclosed when the article was published after the market closed provided any new information that itself would constitute an additional, separate corrective disclosure.

54. Defendants would surely continue to utilize their well-credentialed expert in an effort to prove their causation and damages arguments, invariably resulting in a "battle of the experts," the outcome of which is inherently unpredictable. These risks could not be eliminated until after a successful trial and the exhaustion of all appeals. Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the alleged damages – or even nothing at all.

## C. The Complexity, Expense, and Likely Duration of the Litigation

55. The continuation of this Action would be long, complex, and costly to all parties involved. Were the litigation to proceed, fact and expert discovery, summary judgment motions, trial, and possible appeals would be lengthy and would entail considerable additional costs.

56. At the time the Settlement was reached, the parties were awaiting the Court's decision on Lead Plaintiff's motion for class certification, and given that the Court bifurcated discovery, the parties had not yet even begun merits discovery, which can be one of the most expensive and time-consuming aspects of litigation. There is no question that merits discovery in this Action would not only be complex, but also expensive and protracted. Lead Plaintiff would need to overcome Defendants' inevitable arguments that certain documents – including those relating to the Company's outside investigation into Mr. Moonves and CBS's culture – were protected by the attorney-client privilege and/or work product doctrine. Lead Plaintiff also would have expended significant resources seeking relevant documents from Defendants and third parties with relevant information, and in preparing for and taking both party and non-party depositions. Accordingly, fact discovery would be protracted and expensive, with no assurance that even after the time, effort and cost expended, Lead Plaintiff would have been able to successfully procure necessary discovery.

**D.      Additional Factors**

57.     The experience of Lead Counsel also favors the Settlement.  Robbins Geller is nationally recognized for its experience and expertise in complex class action and securities litigation.  Our reputation as attorneys who are willing to zealously carry a meritorious case through trial and appeals gave us a strong negotiating position, even under the challenging circumstances presented here.  *See* Declaration of Spencer A. Burkholz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."), Ex. F.

58.     Finally, the lack of opposition to the Settlement amount also militates in favor of the Settlement.[2]  As outlined below, notice has already been widely disseminated to potential Settlement Class Members.  The absence of any objections to the amount of the Settlement and very limited number of requests to opt out of the Settlement Class to date weigh in favor of the Settlement.

59.     Based on all of these factors, Lead Counsel and Lead Plaintiff respectfully submit that the Settlement represents a very favorable result for the Settlement Class.  The Settlement provides Settlement Class Members with a substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all if the litigation were to continue.

**IV.      MAILING AND PUBLICATION OF NOTICE OF SETTLEMENT**

60.     The Preliminary Approval Order, among other things, appointed Gilardi as the Claims Administrator and directed it to cause the mailing of the Notice and Proof of Claim Form to all potential Settlement Class Members identifiable with reasonable effort, no later than June 13, 2022. ECF 188, ¶9(b).

---

[2]    As noted, one objection to the $10 minimum distribution was filed.  It is addressed in the Settlement Memorandum, filed herewith.

61.    The Preliminary Approval Order also directed Lead Counsel to cause the Summary Notice to be published in the national edition of *The Wall Street Journal* and over a national newswire service, no later than June 20, 2022. *Id.*, ¶9(c).

62.    The Murray Declaration states that over 162,000 copies of the Notice and Proof of Claim have been mailed to potential Settlement Class Members, banks, brokers, and nominees to date, and that the Summary Notice was published electronically on *Business Wire*, and in print in *The Wall Street Journal*, on June 17, 2022, in compliance with the Preliminary Approval Order. Murray Decl., ¶¶4-12.

63.    To date, only one objection to the $10 minimum distribution was filed, and only two requests for exclusion have been received. Murray Decl., ¶16.

## V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

64.    The Plan of Allocation is set forth in the Notice (*see* Murray Decl., Ex. A, Notice at 9-11), and provides that the Net Settlement Fund will be distributed to Settlement Class Members who submit timely and valid Proof of Claim Forms and whose claims for recovery have been permitted under the terms of the Stipulation ("Authorized Claimants"). The Plan of Allocation provides that a Settlement Class Member will be eligible to participate in the distribution of the Net Settlement Fund only if the Settlement Class Member has an overall net loss on all applicable transactions in CBS stock. The Plan of Allocation proposed by Lead Plaintiff, which was prepared with the assistance of Lead Counsel's in-house damages analyst, is designed to achieve an equitable and rational distribution of the Net Settlement Fund to Authorized Claimants, and is consistent with the Exchange Act.

65.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Proof of Claim Form and all required information, postmarked or submitted

online no later than September 19, 2022. As provided in the Notice, after deduction of taxes, approved costs, and attorneys' fees and expenses and an Award to Lead Plaintiff, the Net Settlement Fund will be distributed, according to the Court-approved Plan of Allocation, to Authorized Claimants who are entitled to a distribution.

66.    Gilardi, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the Plan of Allocation. Lead Counsel believes that the Plan of Allocation, which is similar to hundreds of plans approved by courts over decades, provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants. To date, only one Settlement Class Member has objected to the portion of the proposed Plan of Allocation that provides that only those Authorized Claimants who would receive at least $10 will recover from the Settlement Fund. That objection is addressed in the Settlement Memorandum. The Plan of Allocation is fair and reasonable, and should be approved.

## VI.    LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

67.    The successful prosecution of this Action required Lead Counsel's attorneys, forensic accountants, paraprofessionals and staff to perform 5,027.90 hours of work and incur $351,957.39 in expenses. *See* Robbins Geller Fee Decl., Exs. A-B.[3] For their efforts on behalf of the Settlement Class, as described above, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus interest. Lead Counsel also request an award of expenses incurred in connection with

---

[3]    Additionally, as indicated in its memorandum in support of preliminary approval, Lead Counsel's fee and expense application includes time and expenses submitted by The Rosen Firm, P.A. ("Rosen"), counsel for lead plaintiff movant Iron Workers District Council of Philadelphia & Vicinity Benefit & Pension Plans, and Johnson Fistel, LLP ("Johnson Fistel"), additional counsel for plaintiff John Lantz. *See* the Declaration of Phillip Kim Filed on Behalf of The Rosen Law Firm, P.A. in Support of Application for Award of Attorneys' Fees and Expenses ("Rosen Fee Decl."), Exs. A-B, and the Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP. in Support of Application for Award of Attorneys' Fees and Expenses ("Johnson Fistel Fee Decl."), Exs. A-B, submitted herewith.

the prosecution of this Action. The requested expenses are reflected in the books and records maintained by counsel and are an accurate recording of the expenses incurred. *See* Robbins Geller Fee Decl., Ex. B; Johnson Fistel Fee Decl., Ex. B; Rosen Fee Decl., Ex. B.

68.    A 25% fee award is consistent with the percentages of the common fund fees awarded to counsel in other comparable securities class actions in this District and around the country. *See* Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), §III.C., submitted herewith. Based on the quality of Lead Counsel's work and the benefit obtained for Settlement Class Members in light of the risks discussed above, Lead Counsel respectfully submit that the fee and expense request is fair and reasonable.

69.    Lead Counsel has diligently worked for over three years to develop and eventually settle this case. Lead Counsel conducted the litigation in a well-organized fashion to ensure maximum efficiency, and devoted both substantial attorney resources and financial resources to the case. In the time it litigated the case, Robbins Geller, along with Rosen and Johnson Fistel, together accumulated a lodestar of $4,646,891.00. *See* Robbins Geller Fee Decl., Ex. A; Johnson Fistel Fee Decl., Ex. A; Rosen Fee Decl., Ex. A. The requested fee of 25% represents a negative multiplier of 0.79, far below the range of multipliers that courts within this Circuit have allowed. *See* Fee Memorandum, §III.D.

70.    As discussed above, Lead Counsel faced significant risks in pursuing this Action. This was not a case where any recovery was assured. Compounding the risk, Lead Counsel's fees are wholly contingent and dependent upon a successful result and an award by this Court. From the outset, Lead Counsel understood that it was embarking on complex, expensive, challenging, and

- 23 -

lengthy litigation – with no guarantee of compensation for the investment of time, money, and effort the case would require.

71.     In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and pay for the considerable expenses in a case such as this.  Lead Counsel has received no compensation for their services during the course of this Action and has incurred significant expenses in litigating for the benefit of the Settlement Class.

72.     Attorneys from Robbins Geller are among the most knowledgeable and capable practitioners in the field of securities class actions.  *See* Robbins Geller Fee Decl., Ex. F.  CBS is represented by lawyers from Willkie Farr & Gallagher LLP and Mr. Moonves is represented by lawyers from Dechert LLP, both well-known and respected law firms whose lawyers vigorously represented the interests of their clients throughout the entirety of this case.  In the face of this experienced, formidable, and well-financed opposition, Robbins Geller developed this case so as to persuade Defendants to settle the Action on a basis favorable to the Settlement Class.

73.     There are numerous cases, including many handled by Robbins Geller, where class counsel in contingent fee cases such as this, after expenditure of thousands of hours of time and incurring significant costs, have received no compensation whatsoever.  Class counsel who litigate cases in good faith and receive no fees whatsoever are often the most diligent members of the plaintiffs' bar.  The fact that Defendants and their counsel know that the leading members of the plaintiffs' bar are able to, and will, go to trial even in high-risk cases like this one gives rise to meaningful settlements in actions such as this.  The losses suffered by class counsel in other actions where insubstantial settlement offers were rejected, and where class counsel ultimately received little

or no fee, should not be ignored.  Lead Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in contingent litigation is never assured.

74.    Lawsuits such as this are expensive to litigate. Those unfamiliar with the efforts required to litigate class actions often focus on the aggregate fees awarded at the end but ignore the fact that those fees fund enormous overhead expenses incurred during the course of many years of litigation, are taxed by federal and state authorities, are used to fund the expenses of other contingent cases prosecuted by class counsel and help pay the salaries of the firms' attorneys and staff.

75.    While the deadline set by the Court for Settlement Class Members to object to the requested fees and expenses has not yet passed, to date Lead Counsel has received no objections to the requested fee and no objections to the requested expenses.  Lead Counsel will respond to any objections received by the September 19, 2022 deadline in their reply papers, on or before October 27, 2022.

**VII.    LEAD PLAINTIFF SEEKS AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) BASED ON ITS REPRESENTATION OF THE SETTLEMENT CLASS**

76.    The Private Securities Litigation Reform Act of 1995 limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

77.    Here, as explained in the accompanying Lead Plaintiff Declaration, Lead Plaintiff requests an award of $22,255.46 to compensate for its time and expenses related to its active participation in the Action. *See* Lead Plaintiff Declaration, ¶9.

- 25 -

78.    As detailed in the Fee Memorandum, many courts, including those in this Circuit, have approved reasonable payments to compensate class representatives for the time and effort devoted by them on behalf of a class.

79.    Lead Counsel respectfully submits that the amount sought here is eminently reasonable based on Lead Plaintiff's active involvement in the Action, from its consideration of appointment as Lead Plaintiff to the Settlement, which included, among other things, reviewing the Complaint and other key litigation materials, preparing for and sitting for a deposition, assisting with the production of documents, and communicating with Lead Counsel regarding the Action and potential settlement, and conferring with its outside counsel. As such, this request should be granted in its entirety.

## VIII.    CONCLUSION

For the reasons set forth above and in the accompanying Settlement and Fee Memoranda, Lead Counsel respectfully submits that: (i) the Settlement is fair, reasonable and adequate, and should be finally approved; (ii) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Settlement Class Members and should also be approved; and (iii) the application for attorneys' fees of 25% of the Settlement Amount and expenses of $355,355.92, with interest thereon earned at the same rate as the Settlement Fund, plus an Award to Plaintiff of $22,255.46, should be granted in its entirety.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on August 19, 2022.

_____
SPENCER A. BURKHOLZ

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 19, 2022, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ VINCENT M. SERRA
VINCENT M. SERRA

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  vserra@rgrdlaw.com

# Mailing Information for a Case 1:18-cv-07796-VEC Samit v. CBS Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Laura Andracchio**
  LAndracchio@rgrdlaw.com

- **Mary Katherine Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David W. Brown**
  dbrown@paulweiss.com,Mao_fednational@paulweiss.com

- **Spencer A. Burkholz**
  spenceb@rgrdlaw.com,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com,scaesar@rgrdlaw.com

- **Steven M. Cady**
  scady@wc.com

- **Alexander Leonard Cheney**
  acheney@willkie.com,maosdny@willkie.com

- **Todd G. Cosenza**
  tcosenza@willkie.com,maosdny@willkie.com

- **Scott A Edelman**
  sedelman@gibsondunn.com

- **Zeh Sheena Ekono**
  maosdny@willkie.com,zekono@willkie.com

- **Brad D. Feldman**
  bfeldman@paulweiss.com,mao_fednational@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Francis Hans , Jr**
  Richard.Hans@dlapiper.com,ivy.hamlin@dlapiper.com,DocketingNewYork@dlapiper.com,new-york-docketing-7871@ecf.pacerpro.com,richard-hans-7005@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,bmcginty@paulweiss.com,mao_fednational@paulweiss.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Andrew J. Levander**
  andrew.levander@dechert.com,christopher.ruhland@dechert.com,nycmanagingclerks@dechert.com,AutoDocket@dechert.com,9833472420@filings.docketbird.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Angela Liu**
  angela.liu@dechert.com

- **Jessica Ann Masella**
  Jessica.Masella@dlapiper.com,jessica-masella-8419@ecf.pacerpro.com

- **Margaret Mortimer**
  margaret.mortimer@dechert.com

- **Rahul Mukhi**
  rmukhi@cgsh.com,maofiling@cgsh.com

- **Tariq Mundiya**
  maosdny@willkie.com,tmundiya@willkie.com

- **Sharon L. Nelles**
  NELLESS@SULLCROM.COM,s&cmanagingclerk@sullcrom.com,sharon-nelles-8045@ecf.pacerpro.com

- **New York Office of the Attorney General**
  shamiso.maswoswe@ag.ny.gov

- **Beth Deborah Newton**
  newtonb@sullcrom.com,s&cmanagingclerk@sullcrom.com,beth-newton-9897@ecf.pacerpro.com

- **Jonathan Bradley Pitt**
  jpitt@wc.com,jonathan-pitt-1187@ecf.pacerpro.com

- **Andrew R. Podolin**
  APodolin@perkinscoie.com,RKOManagingClerk@rkollp.com

- **Matthew McPherson Balf Riccardi**
  MRiccardi@perkinscoie.com,MAplogan@perkinscoie.com,michellerose@perkinscoie.com,docketnyc@perkinscoie.com,nvargas@perkinscoie.com

- **Lee S Richards , III**
  LeeRichards@perkinscoie.com,michellerose@perkinscoie.com,nvargas@perkinscoie.com

- **Katharine Rodgers**
  rodgersk@sullcrom.com,katherine-rodgers-0146@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Vincent Michael Serra**
  vserra@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Brendan V.. Sullivan , Jr**
  bsullivan@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

John Lantz
,